1   JOSEPH W. COTCHETT (SBN 36324)
    jcotchett@cpmlegal.com
2   TAMARAH P. PREVOST (SBN 313422)
    tprevost@cpmlegal.com
3   ANDREW F. KIRTLEY (SBN 328023)
    akirtley@cpmlegal.com
4   MELISSA MONTENEGRO (SBN 329099)
    mmontenegro@cpmlegal.com
5   **COTCHETT, PITRE & McCARTHY, LLP**
6   San Francisco Airport Office Center
    840 Malcolm Road, Suite 200
7   Burlingame, CA  94010
    Telephone: (650) 697-6000
8   Facsimile: (650) 697-0577
9
10  *Attorneys for Defendants*

11
                        **UNITED STATES DISTRICT COURT**
12
                     **NORTHERN DISTRICT OF CALIFORNIA**
13
                              **SAN JOSE DIVISION**
14

15  CHRISTOPHER GLASS and                    Case No. 5:22-cv-02533-BLF
16  FIREARMS POLICY COALITION, INC.,
                                             **DEFENDANTS' NOTICE OF MOTION**
17              Plaintiffs,                  **AND MOTION TO DISMISS PLAINTIFFS'**
                                             **COMPLAINT UNDER RULES 12(b)(1)**
18       v.                                  **AND 12(b)(6); MEMORANDUM OF**
                                             **POINTS AND AUTHORITIES**
19  CITY OF SAN JOSE;
20  ANTHONY MATA, in his official capacity as   Date:        September 8, 2022
    Chief of Police of the City of San Jose; and  Time:        9:00 a.m.
21  JENNIFER MAGUIRE, in her official capacity as  Courtroom:   3 – 5th Floor
    City Manager of the City of San Jose,        Judge:       Hon. Beth Labson Freeman
22
23              Defendants.

24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

  **PLEASE TAKE NOTICE** that on September 8, 2022, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Beth Labson Freeman, United States District Judge of the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, Defendants City of San Jose, Anthony Mata (in his official capacity as the City's Chief of Police), and Jennifer Maguire (in her official capacity as the City Manager) (collectively, the "City" or "Defendants") will and hereby do move this Court to dismiss Plaintiffs' Complaint (ECF No. 1) in its entirety under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack ripeness and standing, and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted as to both of Plaintiffs' causes of action.

  This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declarations of Tamarah P. Prevost and Sarah Zarate and all exhibits thereto; the Proposed Order; the anticipated reply brief; and any other papers Defendants may file in support of the motion, as well as all judicially noticeable facts, the files and records in this action, and such other evidence and argument as may be provided to the Court at or before the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

  1. Whether Plaintiffs' claims, which challenge the lawfulness of a 2022 San Jose ordinance requiring non-exempt San Jose gunowners to pay an annual Gun Harm Reduction Fee in an unspecified amount that still needs to be determined through future action by the City Council, should be dismissed under Rule 12(b)(1) for lack of ripeness and/or lack of standing?

  2. Whether Plaintiffs' claims should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted?

Dated:  May 19, 2022     **COTCHETT, PITRE & McCARTHY, LLP**

        By: */s/ Tamarah P. Prevost*
          Joseph W. Cotchett
          Tamarah P. Prevost
          Andrew F. Kirtley
          Melissa Montenegro

        *Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ..................................................................1

I.  INTRODUCTION ...............................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND.........................................2

    A.  History of the Ordinance ........................................................................2

    B.  Summary of the Ordinance .....................................................................3

        1.  Liability Insurance Requirement..................................................3

        2.  Annual Gun Harm Reduction Fee ...............................................4

        3.  Self-Certification of Compliance ................................................4

III. LEGAL STANDARDS.........................................................................................5

    A.  Rule 12(b)(1) ...........................................................................................5

    B.  Rule 12(b)(6) ...........................................................................................6

    C.  Facial Constitutional Challenges............................................................6

IV. ARGUMENT ........................................................................................................7

    A.  The Complaint Should Be Dismissed Under Rule 12(B)(1)....................7

        1.  Plaintiffs' Claims Are Not Ripe for Review .................................7

        2.  Plaintiffs Also Lack Article III Standing ....................................9

        3.  Plaintiffs Glass Does Not Have Standing ..................................10

        4.  Plaintiffs FPC Does Not Have Organizational Standing ...........11

        5.  Plaintiffs Do Not State a Proper Facial Constitutional Challenge ...............12

    D.  The Complaint Should Be Dismissed Under Rule 12(b)(6). ...................12

        1.  Plaintiffs Fail to State a Second Amendment Claim...................12

            a.  The Appropriate Level of Scrutiny is Intermediate Scrutiny............13

            b.  The Ordinance Easily Survives Intermediate Scrutiny. ...................15

                i.  The City's Objective in Passing the Ordinance is Important .....................15

                ii. There is a Reasonable Fit Between the Ordinance and the City's Objective .....................16

c.      Plaintiffs Fail to State a First Amendment Claim Based on Compelled Speech or Association. ....................................20

E.      THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND. ...........................................................................................23

V.      CONCLUSION .............................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967)............................................................................................7

*Americans for Prosperity Found. v. Bonta*,
   141 S.Ct. 2373 (2021)......................................................................................6, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................6

*Bauer v. Becerra*,
   858 F.3d 1216 (9th Cir. 2017)................................................................14, 15, 19

*Bd. of Regents of the Univ. of Wis. Sys. v. Southworth*,
   529 U.S. 217 (2000)..........................................................................................22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................6, 9, 22

*Cal. Democratic Party v. Jones*,
   530 U.S. 567 (2000)..........................................................................................23

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010)..............................................................................7

*Chapman v. Pier 1 Imports (U.S.), Inc.*,
   63 F.3d 939 (9th Cir. 2011)...............................................................................12

*City of Renton v. Playtime Theaters, Inc.*,
   475 U.S. 41 (1986)............................................................................................17

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)..........................................................................................10

*Cramer v. Brown*,
   2012 WL 13059699 (C.D. Cal. Sept. 12, 2012).................................................7

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)......................................................................13, 14, 18, 19

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)..........................................................................................11

*Fyock v. Sunnyvale*,
   779 F.3d 991 (9th Cir. 2015)..............................................................................15

*Gilbert v. Chase Home Fin., LLC*,
 2013 WL 2318890 (E.D. Cal. May 28, 2013)..................................................................10

*Gitlow v. People of State of New York*,
 268 U.S. 652 (1925)..........................................................................................................22

*Havens Realty Corp. v. Coleman*,
 455 U.S. 363 (1982)..........................................................................................................11

*Heller v. District of Columbia*,
 670 F.3d 1244 (D.C. Cir. 2011) .......................................................................................13

*Heller v. District of Columbia*,
 801 F.3d 264 (D.C. Cir. 2015) .........................................................................................14

*Jackson v. City and County of San Francisco*,
 746 F.3d 953 (9th Cir. 2014).........................................................................6, 13, 14, 17

*Janus v. AFSCME, Council 31*,
 138 S.Ct. 2448 (2018) .................................................................................................22, 23

*Kachalsky v. County of Westchester*,
 701 F.3d 81 (2d Cir. 2012)...............................................................................................16

*Keller v. State Bar of California*,
 496 U.S. 1 (1990)..............................................................................................................23

*Kokkonen v. Guardian Life Ins. Co. of Am.*
 511 U.S. 375, 377 (1994)....................................................................................................5

*Kwong v. Bloomberg*,
 723 F.3d 160 (2d Cir. 2013).................................................................................14, 15, 19

*La Asociacion de Trabajadores de Lake v. City of Lake Forest*,
 624 F.3d 1083 (9th Cir. 2010)..........................................................................................11

*Leadsinger, Inc. v. BMG Music Pub.*,
 512 F.3d 522 (9th Cir. 2008)............................................................................................24

*Lopez v. Turnage*,
 2021 WL 5142070 (N.D. Cal. Oct. 15, 2021)...................................................................24

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)........................................................................................................9, 10

*Maya v. Centex Corp.*,
 658 F.3d 1060 (9th Cir. 2011)..........................................................................................12

*McDonald v. City of Chicago*,
 561 U.S. 742 (2010)..........................................................................................................19

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
  858 F.2d 1376 (9th Cir. 1988)..................................................................................24

*Murdock v. Pennsylvania*,
  319 U.S. 105 (1943)...............................................................................................19

*Nat'l Park Hosp. Assn. v. Dep't. of Interior*,
  538 U.S. 803 (2003).................................................................................................7

*National Ass'n for Advancement of Colored People v. Button*
  (1963) 371 U.S. 415...............................................................................................21

*Nordyke v. King*,
  681 F.3d 1041 (9th Cir. 2012).....................................................................12, 18, 19

*O'Connell v. Gross*,
  No. CV 19-11654-FDS, 2020 WL 1821832 (D. Mass. Apr. 10, 2020)..........................14

*Parks Sch. of Bus. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995).....................................................................................6

*Pena v. Lindley*,
  898 F.3d 969 (9th Cir. 2018)....................................................................................18

*Portland Police Ass'n v. City of Portland*,
  658 F.2d 1272 (9th Cir. 1981)..................................................................................24

*PruneYard Shopping Ctr. v. Robins*,
  447 U.S. 74 (1980)..................................................................................................22

*R.J. Reynolds Tobacco Co. v. Shewry*,
  423 F.3d 906 (9th Cir. 2005)....................................................................................22

*Reno v. Catholic Soc. Servs., Inc.*,
  509 U.S. 43 (1993).....................................................................................................5

*Rizzo v. Goode*,
  423 U.S. 362 (1976)................................................................................................24

*Rodriguez v. City of San Jose*,
  930 F.3d 1123 (9th Cir. 2019)..................................................................................11

*Rumsfeld v. Forum for Academic and Inst. Rights, Inc.*,
  547 U.S. 47 (2006)..................................................................................................22

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004).....................................................................................6

*Scholl v. Mnuchin*,
  489 F. Supp. 3d 1008 (N.D. Cal. 2020) ......................................................................7

*Scott v. Pasadena Unified Sch. Dist.*,
　306 F.3d 646 (9th Cir. 2002)............................................................................8

*Shurtleff v. City of Boston, Massachusetts*,
　142 S.Ct. 1583 (2022) ..........................................................................20, 21

*Sierra Club v. United States Army Corps of Eng'rs*,
　990 F. Supp. 2d 9 (D.C. Cir. 2013)...................................................................8

*Smith v. Pac Properties & Dev. Corp.*,
　358 F.3d 1097 (9th Cir. 2004)........................................................................11

*Sprewell v. Golden State Warriors*,
　266 F.3d 979 (9th Cir. 2001)............................................................................6

*Stimmel v. Sessions*,
　879 F.3d 198 (6th Cir. 2018)..........................................................................15

*Summers v. Earth Island Inst.*,
　555 U.S. 488 (2009) .........................................................................................9

*Teixeira v. Cnty. of Alameda*,
　873 F.3d 670 (9th Cir. 2017)..........................................................................18

*Thomas v. Anchorage Equal Rights Comm'n*,
　220 F.3d 1134 (9th Cir. 2000)..........................................................................5

*Toilet Goods Ass'n, Inc. v. Gardner*,
　387 U.S. 158 (1967) .........................................................................................7

*Torcivia v. Suffolk Cty., New York*,
　17 F.4th 342 (2d Cir. 2021)............................................................................15

*Turner Broad. Sys., Inc. v. FCC*,
　520 U.S. 180 (1997) .......................................................................................16

*United States v. Chester*,
　628 F.3d 673 (4th Cir. 2010)..........................................................................18

*United States v. Chovan*,
　735 F.3d 1127 (9th Cir. 2013)..........................................................13, 15, 16

*United States v. Gila Valley Irr. Dist.*,
　31 F.3d 1428 (9th Cir. 1994)............................................................................9

*United States v. Marzzarella*,
　614 F.3d 85 (3d Cir. 2010)............................................................................18

*United States v. Power Co.*,
　2008 WL 2626989 (D. Nev. June 26, 2008) ...................................................9

*United States v. Skoien*,
    614 F.3d 638 (7th Cir. 2010) ............................................................................... 18

*Vieux v. Easy Bay Reg'l Park Dist.*,
    906 F.3d 1330 (9th Cir. 1990) ............................................................................... 7

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*
    576 U.S. 200 (2015) ............................................................................................ 21

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ............................................................................................ 14

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) ............................................................................. 6, 7, 12, 23

*Westlands Water Distrib. Dist. v. Nat. Res. Defense Council*,
    276 F.Supp.2d 1046 (E.D. Cal. 2003) .................................................................... 24

*Young v. Hawaii*,
    992 F.3d 765 (9th Cir. 2021) ..................................................................... 9, 13, 14

**Ordinances**

San Jose Ordinance ............................................................................................... 1
    § 10.32.200 ....................................................................................................... 21
    § 10.32.200(A) ..................................................................................................... 3
    § 10.32.200(B)(10)-(13) .................................................................................... 3, 17
    § 10.32.200(B)(11) ............................................................................................... 3
    § 10.32.200(B)-(C) ............................................................................................... 4
    § 10.32.200(B)(4)-(10) .......................................................................................... 3
    § 10.32.205(B) ..................................................................................................... 4
    § 10.32.210(A), (C) .............................................................................................. 3
    § 10.32.215 .................................................................................................. 2, 4, 7
    § 10.32.220(A) ..................................................................................................... 4
    § 10.32.220(A)(1)-(5) ............................................................................................ 4
    § 10.32.220(B) ........................................................................................ 8, 15, 23
    § 10.32.200(B)(6) ................................................................................................ 16
    § 10.32.200(B)(13) ................................................................................................ 4
    § 10.32.210 ......................................................................................................... 14
    § 10.32.215 .................................................................................................. 9, 13, 14
    § 10.32.220 .............................................................................................. 13, 20, 21
    § 10.32.220(A)(2)-(4) ........................................................................................... 17
    § 10.32.220(D) .................................................................................................... 21
    § 10.32.225(C) .................................................................................................... 19
    § 10.32.230(A) ..................................................................................................... 5
    § 10.32.230(A)-(B) ............................................................................................... 5
    § 10.32.235(A) ................................................................................................. 7, 21
    § 10.32.235(A)(2) ................................................................................................. 4
    § 10.32.235(A) .................................................................................................... 21
    § 10.32.235(A)(1) ................................................................................................. 4

§ 10.32.235(A)(4) ............................................................................................3, 9. 19
§ 10.32.240(A) .......................................................................................................5
§ 10.32.240(B) ..................................................................................................2,5, 7
§ 10.32.245 ..............................................................................................................5
§ 10.32.255(A)-(C) ................................................................................................3

**Other Authorities**

Disease Control and Prevention, *Firearm Violence Prevention*, *available at*
https://www.cdc.gov/violenceprevention/firearms/fastfact.html (accessed May 18,
2022) ("Firearm injuries are a serious public health problem. In 2020, there were
45,222 firearm-related deaths in the United States – that's about 124 people dying
from a firearm-related injury each day. More than half of firearm-related deaths
were suicides ....") ...............................................................................................15

FPC: Firearms Policy Coalition, About FPC, available at
https://www.firearmspolicy.org/about ..................................................................2

6 Wright & Miller, Fed. Prac. & Proc. § 1473 (3d ed. 2021) ....................................23

**Rules**

Federal Rules of Civil Procedure
Rule 12(b)(1) ................................................................................................5, 6, 7
Rule 12(b)(1) ............................................................................................................24
Rule 12(b)(6) ..............................................................................................2, 6, 12, 24
Rule 15(a) .................................................................................................................23
Rule 15(d) ................................................................................................................24

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The San Jose Ordinance ("Ordinance") at issue in this action springs from the legitimate authority of Defendant City of San Jose ("City" or "San Jose") to enact legislation aimed at reducing gun deaths and injuries and compensating victims of accidental shootings. The City believes that smart, innovative policies informed by public health experts and gunowners alike can reduce firearm-related deaths and injuries, while fully respecting lawful gunowners' Second Amendment rights to keep and bear arms for self-defense. State and local governments must be granted leeway to address the complex challenge of reducing the ever-increasing numbers of gun-related deaths and injuries.

The Ordinance here requires non-exempted San Jose gunowners to obtain liability insurance for gun accidents (i.e., an unintentional shooting resulting in death or injury) and to pay a reasonable annual Gun Harm Reduction Fee ("Fee"), which a City-designated nonprofit organization will use to provide gunowners and their families with voluntary programming and services related to gun safety, mental health, and domestic violence.

Plaintiffs Christopher Glass and the Firearms Policy Coalition, Inc. ("FPC") seek to strike the Ordinance down. Their Complaint is legally defective and should be dismissed on two grounds.

First, the Complaint should be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(1) because Plaintiffs' claims are not ripe for review, and because Plaintiffs' have not suffered the kind of concrete, non-speculative injury necessary to establish Article III standing. The Ordinance provides a framework for a legal regime but expressly provides that key aspects of that framework must be defined through future City Council resolutions and City Manager rulemaking, none which has yet occurred. For example, the Complaint rests on the theory that the Ordinance's yet-to-be-determined annual Fee is a substantial and unconstitutional burden on Plaintiffs' rights to keep and bear arms—even though the City Council has not yet passed the resolution necessary to establish the amount of the Fee, and even though the City Manager has not completed the rulemaking necessary to establish the criteria for the Ordinance's "financial hardship" exemption. *Cf.* ¶ 32[1] (Plaintiff Glass alleging, in vague and conclusory fashion, that

---

[1] "¶ _" on its own refers to a paragraph of the Complaint.

he "does not expect to qualify for" the financial hardship exemption). Plaintiffs' abstract objections to these and other aspects of the law rest on speculation, contingent future events, and hypotheticals that would require this Court to issue an advisory opinion about a legal regime before the City has even had the chance to flesh out what is still just a framework.

Second, under Rule 12(b)(6), Plaintiffs' claims under the First and Second Amendments to the U.S. Constitution (applicable to the City through the Fourteenth Amendment) fail to state a claim as a matter of law under binding precedent, or because they rest of speculation that collapses under scrutiny. Plaintiff FPC describes one of its "current" focuses to "[g]alvanize the People to draw a line and reject the condition of government expansion and interference with the People's rights and liberty (i.e., 'Fuck you. No.')."[2] But an "all-or-nothing" approach to Constitutional analysis, peppered by hyperbole and conjecture, does not pass muster. And because there are no facts Plaintiffs could allege to cure their defective Complaint, it should be dismissed with prejudice.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     History of the Ordinance

In June 2021, the City's mayor and City Council directed the City Attorney to draft a gun safety ordinance designed to mitigate gun harms for Council's consideration. *See* Decl. of Tamarah P. Prevost ("Prevost Decl.") ¶ 2, Ex. 1; *accord* ¶ 16 & Ex. C. Six months and seven detailed memoranda later, the Council, at its January 25, 2022 meeting, heard a first reading of the draft ordinance, directed that it be published and that certain amendments be drafted, and voted to reconsider the Ordinance at a later date. Prevost Decl. ¶¶ 3-9, Exs. 2-8; *see also* ¶¶ 17-27. On February 8, 2022, the City enacted the Ordinance. ¶ 27. The Ordinance expressly leaves key aspects of the law unspecified and dependent on future action by the City Council and City Manager (*see* §§ 10.32.215, 10.32.235(A), 10.32.240(B)).[3] The Ordinance provides the Council and City Manager 180 days to take those actions before the Ordinance becomes effective on August 7, 2022. § 2; *accord* ¶ 27.

---

[2] *See* FPC: Firearms Policy Coalition, About FPC, available at https://www.firearmspolicy.org/about.

[3] "§ _ " on its own refers to a section of the Ordinance. *See* Prevost Decl., Ex. 13 (copy of Ordinance).

**B.**     **Summary of the Ordinance**

The Ordinance's basic purpose is to "reduce gun harm" "for the protection of the welfare, peace, and comfort of the residents of the City of San Jose." § 10.32.200(A). To "reduce the number of gun incidents," the Ordinance seeks to provide voluntary gun safety and other "[p]rograms and services to gun owners and their households" and to require gunowners to obtain liability insurance to compensate victims of accidental shootings, which is partly informed by an analogue to the success of car insurance mandates in helping reduce vehicle collision fatalities and injuries. § 10.32.200(B)(10)-(13); *see also* § 10.32.200(B)(11) (finding risk-based automobile liability insurance mandates were part of "a comprehensive public health approach to car safety" that helped reduced U.S. motor vehicle collision fatalities by 80%). The Ordinance is informed by public health research and data, such as findings that more than a third of all gun injuries are from unintentional shootings, that gunowners and those who live with them are at significantly higher risk of gun suicide and homicide than the rest of the population, and that gun-related deaths or serious bodily injuries cost San Jose residents $442 million per year. § 10.32.200(B)(4)-(10).

The Ordinance applies to all City residents who own a gun, with three exceptions: (1) peace officers, (2) those with a state concealed weapon license, and (3) those for whom compliance with the Ordinance would create a "financial hardship." § 10.32.255(A)-(C). With respect to the latter, the Ordinance authorizes the City Manager to "promulgate [] regulations" on "[t]he criteria by which a person can claim a financial hardship exemption." § 10.32.235(A)(4). The City Manager has not yet promulgated these regulations. *See* Decl. of Sarah Zarate, City Manager's Office ("CMO Decl.") ¶¶ 4-8. With respect to all non-exempt persons, the Ordinance imposes three main requirements.

**1.**     **Liability Insurance Requirement**

First, gunowners must obtain "a homeowner's, renter's or gun liability insurance Policy … specifically covering losses or damages resulting from any accidental use of the Firearm, including but not limited to death, injury or property damage" within 30 days of the Ordinance taking effect (i.e., September 7, 2022) or a later date prescribed by regulation. § 10.32.210(A), (C). The purpose of the liability insurance requirement is to ensure victims of accidental shootings have access to compensation, and to leverage private insurance market forces as a means of "encouraging safer behavior."

§ 10.32.220(B)(11)-(12). The Ordinance authorizes the City Manager to "promulgate [] regulations" on "[p]rocesses related to the implementation of the liability insurance requirement, and forms necessary thereto," which must be completed before the Ordinance can be fully effectuated. § 10.32.235(A)(1); CMO Decl. ¶¶ 4-8.

### 2.    Annual Gun Harm Reduction Fee

Second, gunowners must pay an annual Fee to make available voluntary programming and services to gunowner residents, "to members of their household, or to those with whom they have a close familiar or intimate relationship" (§§ 10.32.215, 10.32.220(A)) with the goal of "encourag[ing] safer behavior" related to gun ownership and use (§ 10.32.200(B)(13)). The programs and services will focus on suicide prevention, violence reduction and gender-based violence, addiction intervention and substance abuse treatment, mental health services related to gun violence, and firearms safety education or training. § 10.32.220(A)(1)-(5). These programs and services will be provided to qualifying City residents by a nonprofit organization designated by the City Manager. § 10.32.205(B); CMO Decl. ¶¶ 5-6 (testifying that extensive process for designating the nonprofit has not yet begun). While the City may not "specifically direct" how the nonprofit spends monies from the Fee, the Ordinance is clear that "[n]o portion of the monies … shall be used for litigation, political advocacy, or lobbying activities." § 10.32.200(B)-(C).

The Ordinance does not set the amount of the Fee but leaves that to be "established by [separate] resolution of the City Council." § 10.32.215. To date, no such resolution has been passed. CMO Decl. ¶¶ 7-8. The Ordinance also authorizes the City Manager to "promulgate [] regulations" concerning the "[d]esignation of the nonprofit organization that will receive the [Fee], any processes and procedures related to the payment of the [F]ee, and any additional guidelines or auditing of the use of the monies from the [F]ee" (§ 10.32.235(A)(2)), as well as the annual due date for payment of the Fee (§ 10.32.215). The City Manager has not yet promulgated these regulations. CMO Decl. ¶¶ 7-8.

### 3.    Self-Certification of Compliance

Third, much in the same way car owners must document their compliance with liability insurance and annual registration fee requirements, the Ordinance requires gunowners to complete a "City-designated attestation form" that states basic information about their gun liability insurance and to keep

that form and "proof of payment of the [Fee]" "with the[ir] Firearms where they are being stored or transported." § 10.32.230(A)-(B). Gunowners must also produce the form and proof of payment "when lawfully requested to do so by a peace officer." § 10.32.230(A). The City Manager has not yet designated the attestation form. *See also* CMO Decl. ¶ 5 (listing other items the City Manager's Office still must do with respect to the insurance provision).

Violations of the Ordinance are punishable by an administrative citation and fine, subject to due process protections. § 10.32.240(A). Similar to the Fee, the Ordinance does not set the amount of the administrative fine but leaves that to be "established by [separate] resolution of the City Council." § 10.32.240(B). To date, no such resolution has been passed. Contrary to Plaintiffs' hyperbolic allegations that the Ordinance authorizes the "complete loss of Second Amendment rights" of those who fail or refuse to comply with the Ordinance (¶ 35(b)), the Ordinance only authorizes the "impound[ment]" of firearms "subject to a due process hearing," and only "to the extent allowed by law" (§ 10.32.245). There is currently no lawful basis to impound firearms under state or federal law, meaning this particular provision will not take effect unless and until, for example, the State passes a law permitting municipalities to impound firearms.

The Ordinance also contains a severability clause. § 3.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

The plaintiff bears the burden of establishing the Court has jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).[4] The Court's proper role is "to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution," which means it lacks jurisdiction "to issue advisory opinions [] or to declare rights in hypothetical cases." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The doctrine of ripeness "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* Ripeness "is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs.,*

---

[4] Unless otherwise noted, internal citations, alterations, and quotations are omitted.

*Inc.*, 509 U.S. 43, 57 n.18 (1993). "A Rule 12(b)(1) jurisdictional attack may be facial or factual," *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). By way of this Motion, the City primarily makes a facial attack, that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* To the extent the Court deems any part of the City's argument to represent a factual attack disputing the truth of Plaintiffs' allegations purporting to establish federal jurisdiction, the court "need not presume the truthfulness of the plaintiff's allegations" and "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

### B.      Rule 12(b)(6)

Defendants are entitled to dismissal under Rule 12(b)(6) if, accepting Plaintiffs' allegations as true, the complaint fails to state a claim. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The Court should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Plaintiffs' "obligation to provide the 'grounds' of [their] 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The allegations must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### C.      Facial Constitutional Challenges

To bring a successful facial challenge to a law, the plaintiff must "establish no set of circumstances exists under which the law would be valid or show that the law lacks a plainly legitimate sweep," or (in the First Amendment context) that "a substantial number of its applications are unconstitutional, judged in relation to the [law]'s plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S.Ct. 2373, 2387 (2021) (cleaned up and citations omitted). Because facial challenges "often rest on speculation" (*Jackson v. City and County of San Francisco*, 746 F.3d 953, 962 (9th Cir. 2014) ("*Jackson*")), they are "disfavored" for "several reasons." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450, 455 (2008). Among other things, "they raise the risk of premature interpretations of statutes on the basis of factually barebones records," and "threaten to short

circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner inconsistent with the Constitution." *Id.* at 450-51.

## IV.     ARGUMENT

### A.     The Complaint Should Be Dismissed Under Rule 12(B)(1).

#### 1.     Plaintiffs' Claims Are Not Ripe for Review.

The Ordinance was enacted in February 2022, but it expressly provides a 180-day period before it becomes effective on August 7, 2022. § 2. During this time, the Council needs to pass resolutions setting the amount of the Fee and any administrative fine for noncompliance (§§ 10.32.215, 10.32.240(B)), and the City Manager needs to promulgate key regulations, such as those establishing the criteria for the financial hardship exemption and designating the nonprofit organization (§ 10.32.235(A)). CMO Decl. ¶¶ 5-8. Since the Ordinance is not yet effective, and since none of the required resolutions or regulations have yet been passed or promulgated, Plaintiffs' claims are not ripe for review and, thus, subject to dismissal under Rule 12(b)(1). *See Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1024-27 (N.D. Cal. 2020).

Ripeness doctrine looks primarily at two considerations: "the hardship to the parties of withholding court consideration" and "the fitness of the issues for judicial decision." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). The "basic rationale" of the ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements" (*id.* at 148), and to ensure that challenges to laws are "test[ed] … in a concrete situation" (*Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 165 (1967)). Pre-enforcement challenges to laws are not ripe if it is likely that the law will change before it goes into effect. *See, e.g.*, *Cramer v. Brown*, 2012 WL 13059699, at *3 (C.D. Cal. Sept. 12, 2012) (finding pre-enforcement claim justiciable, in part, because the legislature "ha[d] no power to amend the statute before its effective date" and there was "no reason to think the law change"). Additionally, an issue "may not be ripe for review if further factual development would significantly advance [the court's] ability to deal with the legal issues presented." *Nat'l Park Hosp. Assn. v. Dep't. of Interior*, 538 U.S. 803, 812 (2003); *see also Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122-23 (9th Cir. 2010) (case not ripe if it "involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all"); *Vieux v. Easy*

*Bay Reg'l Park Dist.*, 906 F.3d 1330, 1344 (9th Cir. 1990) (federal courts may not issue advisory opinions based on a "hypothetical state of facts").

"The prudential considerations of ripeness are amplified when constitutional considerations are concerned." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) ("*Scott*"). Indeed, "[t]he Supreme Court has neatly instructed that the jurisdiction of federal courts to hear constitutional challenges should be exercised only when the underlying constitutional issues [are tendered] in clean-cut and concrete form." *Id.* (quoting *Rescue Army v. Mun. Ct. of Los Angeles*, 332 U.S. 549, 584 (1947)). In *Scott*, for example, the Ninth Circuit determined that an equal protection challenge to a school admissions policy was not ripe for review because the court did not "know[] the conditions under which the policy was to be implemented," which meant that "no court can make a true determination as to whether the policy" passes constitutional muster. *Id.* at 663.

Here, Plaintiffs' claims are not ripe for review because key aspects of the Ordinance that Plaintiffs challenge have not yet been established (e.g., the amount of the Fee and the nonprofit itself), and because Plaintiffs' allegations about the conditions under which the Ordinance is to be implemented rest on self-serving speculation rather than any actual knowledge (e.g., how the nonprofit behaves in providing voluntary programming and services). For example, Plaintiffs claim the Fee requirement violates their First Amendment "right to refrain from speaking" by "[f]orcing" them to "subsidize" and "endorse ideas they find objectionable." ¶¶ 57-58. This claim is clearly based on speculation. *See Sierra Club v. United States Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 31-32 (D.C. Cir. 2013) (claim not ripe where the complained-of conduct "has not yet occurred and is still in the process of being addressed"). Plaintiffs' allegations also completely ignore that the Ordinance expressly prohibits the nonprofit from engaging in policy activity or advocacy. § 10.32.220(B) (expressly prohibiting nonprofit from spending any "portion of the monies from the [Fee]" on "litigation, political advocacy, or lobbying activities").

Similarly, Plaintiffs' Second Amendment challenge is based on allegations that the Fee will "directly and substantially burden the core Second Amendment right to possess firearms for self-defense" (¶ 49), despite the fact that the amount of the Fee has not yet been established by the required City Council resolution (*see* § 10.32.215; CMO Decl. ¶¶ 7-8). This state of affairs makes it impossible to determine whether the *extent* of the burden imposed by the Fee is "substantial[]," as Plaintiffs allege.

¶ 49. And the *extent* of the burden is precisely before the Court in evaluating Plaintiffs' First and Second Amendment claims. It is "premature" to ask a federal court "to issue a binding interpretation of a local ordinance based on what might happen in the future without first giving the City … the opportunity to interpret its own ordinance." *United States v. Power Co.*, 2008 WL 2626989, at *4 (D. Nev. June 26, 2008). Moreover, important *regulations* bearing on the Fee have not yet been promulgated. *See, e.g.*, §§ 10.32.215, 10.32.235(A)(4) (authorizing City Manager to "promulgate [] regulations" concerning the "[d]esignation of the nonprofit organization … any processes and procedures related to the payment of the fee, and any additional guidelines or auditing of the use of the monies from the fee," as well as "[t]he financial hardship exemption"); CMO Decl. ¶¶ 4-8. Claims are not ripe when based on "mere speculation" as to what a future regulatory decision will be. *United States v. Gila Valley Irr. Dist.*, 31 F.3d 1428, 1436 (9th Cir. 1994). And similarly, Plaintiffs' assumption that gunowners "do not need" services/programs that have not been fully identified yet lacks any factual basis whatsoever. *See* ¶ 50(b), CMO Decl. ¶ 6.

As for Plaintiffs' speculative fears that the City's true purpose in enacting the Ordinance is to "reduce firearm ownership" and "create[e] a pretext for confiscating firearms" (¶ 51), these claims are also not ripe because they "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Young v. Hawaii*, 992 F.3d 765, 828 (9th Cir. 2021) (en banc) ("*Young*"). Cherry-picked prior extrinsic statements made by certain City official do nothing to advance Plaintiffs' claims. *See, e.g.*, ¶¶ 17, 22, 23, 25, 26, 35, 50(a), 52. The allegations do not satisfy Plaintiffs' burden. *Twombly*, 550 U.S. at 555.

## 2. Plaintiffs Also Lack Article III Standing.

The foregoing argument also makes clear that Plaintiffs lack Article III standing to seek relief based on "conjectural and hypothetical" future harm. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). To have Article III standing, each plaintiff must establish an injury-in-fact that is concrete, particularized and actual—not conjectural; that this injury is fairly traceable to the City's conduct and challenged legislation, and that it is likely (as opposed to speculative) that the injury will be redressed by favorable decision from this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Given the unsettled state of the Ordinance and the significant future legislative and rulemaking action required

1   to flesh out its requirements, Plaintiffs cannot and have not alleged, as necessary, that any threatened

2   injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("allegations

3   of *possible* future injury are not sufficient" (emphasis in original)). Instead, Plaintiffs' own allegations

4   demonstrate their lack of standing. *E.g.s*, ¶¶ 49, 50(b), 51, 57-58.

### 3.  Plaintiff Glass Does Not Have Standing.

6       Plaintiff Glass's allegations introduce at least two additional reasons as to why he lacks standing.

7   First, he alleges, in vague and conclusory fashion, that he "does not expect to qualify for" the Ordinance's

8   yet-to-be-defined financial hardship exemption. ¶ 32. In addition to the ripeness concerns (i.e., neither

9   Mr. Glass nor anyone else has any idea what the exemption's criteria will be, as they have not yet been

10  promulgated), this allegation fails because Glass provides no allegations that would allow the Court to

11  assess whether his subjective expectation is a reasonable one. ¶ 32. This defeats Glass's standing because

12  it prevents him from plausibly alleging, as he must, that none of the Ordinance's exemptions apply to

13  him and he is, therefore, subject to the Ordinance's requirements. *Clapper v. Amnesty Int'l USA*, 568

14  U.S. 398, 409 (2013); *see also Lujan*, 504 U.S. at 560-61.

15      Second, Mr. Glass lacks standing to challenging the Ordinance's insurance requirement, based

16  on his allegation that *he does not know* whether his existing renter's insurance policy already provides

17  the liability coverage he would be required to obtain under the Ordinance. *See* ¶¶ 11, 38 (alleging "the

18  policy documents in his possession do not specifically address loss or damage resulting from a firearm,"

19  but alleging nowhere that he has actually verified that his policy does not actually provide such coverage).

20  Given this allegation, Glass has failed to establish that the Ordinance's insurance requirement threatens

21  him with *any* injury, since he concedes the possibility that he may already have the required insurance.

22  *Cf. Gilbert v. Chase Home Fin., LLC*, 2013 WL 2318890, at *11 (E.D. Cal. May 28, 2013) (finding

23  plaintiff's allegation that they might "someday los[e] the[ir] property" was "speculative" and failed to

24  establish any "concrete injury"). Clearly, establishing Article III injury requires that a plaintiff do more

25  than allege that he does not really know if he is, but he thinks he might be, injured by an aspect of a law

26  that he wants this Court to declare unconstitutional.

1

#### 4.      Plaintiff FPC Does Not Have Organizational Standing.

A non-profit organization must establish standing either in its own right, or on behalf of its members. It has standing to sue on behalf of its members when, *inter alia*, its members would otherwise have standing to sue in their own right." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (brackets added) (citing *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333 (1977)). For the reasons applicable to Plaintiff Glass above, FPC cannot establish standing for its members.

FPC also lacks standing as an organization. "[T]o do so, [it] must satisfy the traditional standing requirements," *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019), and must show a "concrete and demonstrable injury to the organization's activities, thereby placing a "drain on the organization's resources." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), *La Asociacion de Trabajadores de Lake v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). The organization "cannot manufacture the injury by…simply choosing to spend money fixing a problem that otherwise would not affect the organization at all. It must. . . have suffered some other injury if it had not diverted resources." *Id.* "An organization may only sue if it was forced to choose between suffering an injury and diverting resources to counteract the injury." *Id.* at 1088, n.4.

FPC's only (vague, unsupported) allegation of injuries to itself are its diversion of resources. *See* ¶ 40. FPC has not suffered injury-in-fact based on diversion of resources. "An organization may only sue if it was forced to choose between suffering an injury and diverting resources to counteract the injury." *La Asociacion de Trabajadores*, 624 F.3d at 1088, n.4. FPC alleges that it was "forced" to "divert resources to protecting the Second Amendment rights of Plaintiff Glass, its other San Jose members, and San Jose firearm owners generally" (¶ 40), but that diversion was not to counteract any actual or imminent injury to FPC itself, and simply spending money or resources is insufficient to establish Article III standing. *Id.* at 1088; *but cf. Smith v. Pac Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (allegations that organization had to "divert its scarce resources from other efforts to promote awareness of—and compliance with—federal and state accessibility laws and to benefit the disable community in other ways" to "monitor[ing] the violations and educat[ing] the public regarding the discrimination at issue" are sufficient to allege standing). FPC also alleges that "these are resources that FPC would

otherwise have used to accomplish its organizational objectives" (¶ 40) but fails to show a cognizable injury-in-fact to any of its undefined objectives. Such conclusory allegations of diverting resources are insufficient to establish standing. *See e.g., Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (a plaintiff cannot "rely on a bare legal conclusion to assert injury-in-fact") (internal quotations omitted); *Chapman v. Pier 1 Imports (U.S.), Inc.*, 63 F.3d 939, 955 n.9 (9th Cir. 2011) (en banc) (To "sufficiently allege standing," the plaintiff must do more than offer "labels and conclusions").

FPC has not sufficiently alleged that passage of the Ordinance caused any direct or judicially cognizable injuries to FPC itself, nor on behalf of its members. It cannot establish standing.

### 5. Plaintiffs Do Not State a Proper Facial Constitutional Challenge·

Even if Plaintiffs' claims were somehow ripe and they had standing, their facial challenge still fails because they do not allege facts that "establish no set of circumstances exists under which the law would be valid or show that the law lacks a plainly legitimate sweep," or (in the First Amendment context) that "a substantial number of its applications are unconstitutional, judged in relation to the [law]'s plainly legitimate sweep." *Americans for Prosperity*, 141 S.Ct. at 2387 (cleaned up and citations omitted); *see also Wash. State Grange*, 552 U.S. at 450, 455 (explaining that facial challenges are "disfavored" for "several reasons"). Assuming the Council and City Manager will establish constitutionally reasonable fees, fines, and regulations at some point in the future, the Ordinance's sweep is plainly legitimate because it furthers the City's legitimate efforts to reduce the harm caused by gun-related accidents and imposes only *de minimus* or marginal burdens on the constitution right to obtain or keep a firearm in the home for self-defense. *See Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012) (en banc), *cert. denied*, 568 U.S. 1085 (2013) (rejecting facial challenge to ordinance that regulated gun shows "only minimally and only on county property," without even requiring empirical support justifying the regulation). Plaintiffs' Complaint should be dismissed for this reason alone.

### D. The Complaint Should Be Dismissed Under Rule 12(b)(6).

### 1. Plaintiffs Fail to State a Second Amendment Claim.

Plaintiffs contend the Ordinance impermissibly burdens the Second Amendment rights of City residents to whom the Ordinance applies. ¶¶ 41-53. The Ninth Circuit adjudicates Second Amendment challenges using a two-step test, which "(1) asks whether the challenged law burdens conduct protected

by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013). For purposes of this Motion, Defendants concede the Ordinance imposes some minimal or slight burden, and so proceed to the second step of the test. *See e.g., District of Columbia v. Heller*, 554 U.S. 570, 625 (2008); *Jackson*, 746 F.3d at 959.

### a.   The Appropriate Level of Scrutiny is Intermediate Scrutiny.

Courts look to two factors to determine the appropriate level of scrutiny. Courts first assess how close the law comes to the core of the Second Amendment right, which is the right to keep firearms in the home for purposes of self-defense. *Heller*, 554 U.S. at 629; *Jackson*, 746 F.3d at 963. Unless the challenged law "implicates the core of the Second Amendment right and severely burdens that right," courts in the Ninth Circuit generally apply intermediate scrutiny. *Young*, F.3d 765 at 784; *see also Heller v. District of Columbia*, 670 F.3d 1244, 1257 (D.C. Cir. 2011) ("*Heller II*") ("[A] regulation that imposes a substantial burden upon the core right of self-defense protected by the Second Amendment must have a strong justification, whereas a regulation that imposes a less substantial burden should be proportionately easier to justify."). Here, intermediate scrutiny applies because the Ordinance does not "impos[e] restrictions on the use of handguns within the home" or otherwise come close to regulating the core Second Amendment right of keeping firearms in the home for self-defense. *Jackson*, 746 F.3d at 963. The Ordinance merely requires resident gunowners to obtain liability insurance to provide a mechanism for compensating victims of accidental gun injuries, and to pay a reasonable Fee to fund services aimed at reducing well-established harms that result from guns being present in the home. §§ 10.32.210(A), 10.32.215, 10.32.220.

The second factor of the scrutiny evaluation requires the Court to assess the "severity of the law's burden" on the core Second Amendment right. *Jackson*, 746 F.3d at 963. A law that "severely burdens that right receives strict scrutiny," but in all "other cases in which Second Amendment rights are affected in some lesser way, we apply intermediate scrutiny." *Young*, 992 F.3d at 784. Laws that regulate only the "manner in which persons may exercise their Second Amendment rights" are obviously less burdensome than those which ban firearm possession completely. *Jackson*, 746 F.3d at 961 (citing *Chovan*, 735 F.3d at 1138). Similarly, "firearm regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which

do not. *Jackson*, 746 F.3d at 961; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (noting that laws placing "reasonable restrictions on the time, place, or manner of protected speech" and that "leave open alternative channels" for communication pose less burden to a First Amendment right and are reviewed under intermediate scrutiny).

Here, the burden the Ordinance imposes is minimal: it neither regulates the use of firearms, how or where they are stored, nor any other factors evaluated by courts as directly affecting residents' ability to keep and bear arms for self-defense. *See e.g.*, *Heller*, 554 U.S. at 628-29 (deeming unconstitutional a a total ban on handguns in the home, or one that overly burdens immediate self-defense in the home impossible). Instead, it merely requires gunowners to obtain insurance and pay a reasonable annual Fee. §§ 10.32.210(A), 10.32.215. The Ordinance neither seeks to ban guns nor threatens to seize them. Indeed, the Ninth Circuit (in line with the other Circuits) has long applied intermediate scrutiny to uphold similar laws. *See, e.g., Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017) (upholding Department of Justice's use of gun sale fee for enforcement efforts targeting illegal firearm possession after point of sale under intermediate scrutiny); *Heller v. District of Columbia*, 801 F.3d 264, 278 (D.C. Cir. 2015) ("*Heller III*") (upholding $48 in gun licensing fees under intermediate scrutiny); *Kwong v. Bloomberg*, 723 F.3d 160, 161, 167 (2d Cir. 2013), *cert. denied*, 134 S.Ct. 2696 (2014) (upholding $340 gun licensing fee under intermediate scrutiny); *O'Connell v. Gross*, No. CV 19-11654-FDS, 2020 WL 1821832 (D. Mass. Apr. 10, 2020) (upholding law requiring mandatory safety courses and $300 in fees under intermediate scrutiny).

Plaintiffs' claim that the constitutionality of the Ordinance is subject to strict scrutiny because the "fee and insurance provisions directly and substantially burden the core Second Amendment right to possess firearms for self-defense and other lawful purposes" (¶ 49) fundamentally misunderstands the applicable law. §§ 10.32.210, 10.32.215. Nor does it "severely burden" those rights. *See Young*, 992 F.3d at 784. The applicable cases apply intermediate scrutiny to gun regulations far more restrictive than the Ordinance here. *See, e.g., Bauer*, 858 F.3d 1216 (upholding DOJ's use of gun sale fee for enforcement efforts targeting illegal firearm possession after point of sale under intermediate scrutiny); *Heller III*, 801 F.3d at 278; *Kwong*, 723 F.3d at 167; *O'Connell*, No. CV 19-11654-FDS, 2020 WL 1821832. Intermediate scrutiny is appropriate.

b.      **The Ordinance Easily Survives Intermediate Scrutiny.**

To withstand intermediate scrutiny, the City need only show (1) that their stated objective is significant, substantial, or important; and (2) a reasonable fit between the Ordinance and that objective. *Chovan*, 735 F.3d at 1139.

i.      **The City's Objective in Passing the Ordinance is Important**

First, the City's objective of promoting public safety and addressing gun injuries is undisputedly an "important" government interest. *Chovan*, 735 F.3d at 1139; *see also Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015) (it is "self-evident" that government's interest in promoting public safety and reducing violent crime are substantial and important government interests"); *Stimmel v. Sessions*, 879 F.3d 198, 201 (6th Cir. 2018) (referring to "government's compelling interest of preventing gun violence"); *Torcivia v. Suffolk Cty., New York*, 17 F.4th 342, 359 (2d Cir. 2021) (finding a "substantial governmental interest in preventing suicide and domestic violence"). The Ordinance's other stated purpose of reducing the social and financial costs caused by guns (§ 10.32.200(B)) is also an important interest. *See, e.g., Bauer*, 858 F.3d at 1226; *Kwong*, 723 F.3d at 168 (city permitted to recover costs as part of scheme "designed to promote public safety and prevent gun violence"). There can be no serious doubt that gun violence is a major public health crisis. *See* U.S. Centers for Disease Control and Prevention, *Firearm        Violence        Prevention*,        available        at https://www.cdc.gov/violenceprevention/firearms/fastfact.html (accessed May 18, 2022) ("Firearm injuries are a serious public health problem. In 2020, there were 45,222 firearm-related deaths in the United States – that's about 124 people dying from a firearm-related injury each day. More than half of firearm-related deaths were suicides …."); *see also id.* ("More people suffer nonfatal firearm-related injuries than die. … Nearly 2 out of every 10 [medically treated firearm injuries] are from unintentional firearm injuries."). Indeed, the City reviewed literature documenting this in their passing of the Ordinance. Prevost Decl. ¶ 8, Ex. 7. Thus, the Ordinance clearly meets the first prong under intermediate scrutiny.

/ / /

### ii.    There is a Reasonable Fit Between the Ordinance and the City's Objective

When assessing the reasonableness of fit under immediate scrutiny, courts must give "substantial deference to the predictive judgments" of the legislature on public policy questions that fall outside the courts' competence. *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997) ("*Turner II*"), *see also Chovan*, 735 F.3d at 1139. This is because "the legislature is far better equipped than the judiciary to make sensitive public policy judgments (within constitutional limits)" on complex empirical questions like "the dangers in carrying firearms and the manner to combat those risks." *Kachalsky v. County of Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994)). This Court's "sole obligation" is simply "to assure that, in formulating its judgments, [the legislature] has drawn reasonable inferences based on substantial evidence." *Turner II*, 520 U.S. at 181. That standard is easily met here.

And the City's reasonable legislative judgments are entitled to deference. Aside from the real-world knowledge each councilmember brings to their legislative role (informed by working in a major city, within a country well-known to be plagued by gun violence), the City relied on over a dozen substantive studies, findings, and literature to form its reasonable judgment that an insurance mandate combined with voluntary gun-safety and other programming and services for gunowners and their household members will deter, prevent, or reduce accidental gun harm. *See e.g.*, Prevost Decl. ¶¶ 2-13, Exs. 1-12; *see also id*. ¶ 12, Ex. 11 one study, which is cited in the Ordinance findings at § 10.32.200(B)(6)). The City also evaluated and reviewed materials concerning financial and other harms arising from gun violence. *See, e.g.*, *id.* ¶ 13, Ex. 12; *id.* ¶ 8, Ex. 7 (compendium of materials provided to City Council before its January 25, 2022 meeting). While Plaintiffs allege that the "evidence before the City" does not show the Fee and insurance requirements are "tailored" to the "City's apparent goal of reducing gun violence and its associated costs" (¶ 50), the City's *reasonable legislative judgment* is more than well-supported.

For example, the multitude of studies reviewed by the City Council supports its judgment that the Ordinance's annual Fee requirement and related education programming and services will positively improve public health, safety, and well-being. The Ordinance findings and legislative record more than sufficiently support the reasonableness of the fit between City's important interests in deterring gun-

related deaths and injuries and the imposition of a reasonable annual Fee to fund programs aimed at advancing those exact interests. *See City of Renton*, 475 U.S. at 51-52 (municipality may rely on any evidence "reasonably believed to be relevant"). Indeed, a city is allowed "a reasonable opportunity to experiment with solutions to admittedly serious problems," such as harm caused by firearms. *Jackson*, 746 F.3d at 966, 969 (citing *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 52 (1986)).

Criticizing councilmembers for supposedly not focusing on Plaintiffs' preferred priorities misses the mark entirely. *See, e.g.*, ¶ 50(a) (criticizing the Ordinance for "impos[ing] no restrictions on the criminals who commit gun violence"); ¶ 52 (alleging "City could have considered whether enhancing" San Jose's Gang Prevention Task Force and gun violence restraining orders "would have accomplished the same goals as the Ordinance"). The City Council is not required to prioritize regulation of criminal use (an issue that is, in any event, already heavily regulated and more within the purview of state criminal law rather than municipal law). Gun harm is an important and complex subject, and legislatures are entitled to address any aspect of the problem that they see fit to address.

And when Plaintiffs claim the Ordinance fails intermediate scrutiny for not furthering "the City's apparent goal of reducing gun violence and its associated costs," because it allegedly fails to regulate "the criminals who commit gun violence" or to "defray" or "reimburse … municipal costs of firearm injuries or … resulting from criminal violence," Plaintiffs again misstate both the legal standard and the facts. ¶ 50(a)-(c); *see also* ¶ 25 (arguing in sweeping fashion that the Ordinance "will do nothing to deter criminal gun violence"), *Jackson*, 746 F.3d at 966, 969. Moreover, the Ordinance *is* aimed at reducing criminal gun violence, including by providing gunowners *and their families and intimate partners* access to voluntary programming and services related to "[v]iolence reduction," "gender based violence," "[m]ental health services related to gun violence," and "[a]ddiction intervention and substance abuse treatment." § 10.32.220(A)(2)-(4); *see also* § 10.32.200(B)(10)-(13). To argue the Ordinance does not seek to reduce gun crime is simply inaccurate. And to argue the Ordinance fails because it does not address all possible aspects of the complex area of gun violence is nothing but a distraction.

All Plaintiffs' other arguments likewise fail. First, Plaintiffs' basic contention—that the Ordinance's fee and insurance provisions categorically "infringe upon," "impede," and "directly and substantially burden the core Second Amendment right," apparently regardless of the financial burden

those requirements actually impose (*see* ¶¶ 45, 47, 49)—is directly contrary to binding precedent. That precedent requires that Second Amendment challenges to gun regulations be analyzed based not on *whether* they burden the exercise of Second Amendment rights, but on *the extent to which* they do so (and rejecting challenges to laws that impose only minimal burdens). *See, e.g.*, *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012) (en banc), *cert. denied*, 586 U.S. 1085 (2013) (rejecting challenge to ordinance that burdened Second Amendment rights "only minimally and only on county property," without even requiring empirical support justifying the ordinance).

Second, Ninth Circuit precedent also dooms Plaintiffs' theory that the Ordinance is "categorically invalid" under *Heller* based on Plaintiffs' view that the Ordinance's Fee and insurance requirements are not "based in any historical tradition of firearm regulation." ¶ 48. While some Ninth Circuit decisions review challenged gun regulations in view of "a full textual and historical review of the scope of the Second Amendment" (*Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017) (en banc)), an equally "well-trodden" path is to simply assume *arguendo* that the challenged law burdens protected conduct and was not part of the Anglo-American firearms tradition and jurisprudence at the time of the Framing, thereby skipping the "historical tradition" analysis that Plaintiffs falsely claim is the *sine qua non* of determining the constitutionality of gun regulations. *See e.g., Pena v. Lindley*, 898 F.3d 969, 975 (9th Cir. 2018) ("[in assuming the challenged law burdens protected conduct], we bypass the constitutional obstacle course of defining the parameters of the Second Amendment's individual right …."); *Heller*, 554 U.S. at 635 (declining "to expound upon the historical justifications"); *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) ("We do not think it's profitable to parse these passages of *Heller* as if they contained an answer."); *United States v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010); *United States v. Chester*, 628 F.3d 673, 679 (4th Cir. 2010). The logic of these cases is that tying firearm regulation to historical traditions at the time the constitution was drafted does not provide sufficient leeway for legislators to enact laws addressing ever-evolving issues in an increasingly complex world. This Court should follow that logic in response to Plaintiffs' contention.

Third, Plaintiffs contend that "at minimum [] Plaintiff Glass will need to undertake the burden of ensuring that his existing policy complies with the Ordinance" and "must maintain compliant insurance, and pay the annual firearm fee, for as long as [he] possess[es] firearms." ¶¶ 38-39(a). This requirement

is no different than the triennial fee requirement upheld in *Kwong*. *Kwong v. Bloomberg*, 723 F.3d at 161 (upholding triennial $340 gun licensing fee under intermediate scrutiny). Additionally, it is widely known that the Mayor has publicly proposed a mere $25 fee in a Memorandum provided for Council's review. *See* Prevost Decl. ¶ 5, Ex. 4. Yet the Complaint contains no non-conclusory allegations as to why such a minimal Fee would be an unconstitutional burden on Second Amendment rights, especially when binding Ninth Circuit law is directly to the contrary. *See Bauer*, 858 F.3d at 1225 (upholding constitutionality of California law imposing $19 fee on all gun sales). Nor do Plaintiffs' claims account for the Ordinance's "financial hardship" exemption, which would exempt from the Ordinance's requirements any person who meets its yet-to-be-promulgated criteria. §§ 10.32.225(C), 10.32.235(A)(4).

Tellingly, Plaintiffs' cited cases in their Complaint (*see* ¶¶ 43-44) striking down gun laws are inapposite as they either concerned "handgun bans," a far more severe burden than the Ordinance here (*McDonald v. City of Chicago*, 561 U.S. 742, 750, 792 (2010); *Heller*, 554 U.S. at 635), or actually contradict their position. *See Nordyke*, 681 F.3d at 1044-45 (upholding constitutionality of ordinance regulating display of guns at gun shows "no matter what form of scrutiny applies"). Plaintiffs ignore clearly applicable cases. *See, e.g.*, *Bauer*, 858 F.3d 1216 (upholding California law requiring payment of $19 fee on every firearm sale conducted in the state because of the "minimal nature of the burden" and plaintiff's failure to show the fee "has any impact on [his] actual ability to obtain and possess a firearm"); *Kwong*, 723 F.3d at 161, 167 (upholding mandatory $340 three-year gun license fee because it imposed merely a "marginal, incremental, or [] appreciable [but not substantial] restraint" on Second Amendment rights, "especially considering that plaintiffs [] put forth no evidence … that the fee is prohibitively expensive"). Finally, Plaintiffs reliance on *Murdock v. Pennsylvania*, 319 U.S. 105, 113-14 (1943), a decades-old First Amendment fee case, in support of its argument that the "government 'may not impose a charge for the enjoyment of a right granted by the federal constitution'" (¶ 46) is misplaced. The Ordinance is constitutional under *Murdock* because the Ordinance's liability insurance and annual Fee requirements are carefully tailored to ensure they are not a general revenue tax, directly further the maintenance of public order in the matter regulated, and are even subject to a "financial hardship" exception. § 10.32.225(C); *see also Murdock*, 319 U.S. at 113-17. In sum, intermediate scrutiny applies, and the Ordinance clearly survives. Plaintiffs fail to state a claim under the Second Amendment.

### c. Plaintiffs Fail to State a First Amendment Claim Based on Compelled Speech or Association.

Plaintiffs' First Amendment claim is based on speculation that a yet-to-be-designated nonprofit with unknown leadership "assum[es] that exercising a constitutional right is an inherently dangerous activity" and that "the fee provision requires all San Jose firearm owners to subsidize the organization's speech on this 'matter of great public concern' and on any other related issues that the organization chooses to address through its programs and initiatives." ¶ 60. These claims should be dismissed as pure speculation and for ignoring the parameters the City Manager will ultimately set for the nonprofit. § 10.32.220 (providing how the nonprofit must expend the Fee); CMO Decl. ¶¶ 6-8. They also fail to address the Ordinance as permissible government speech.

"When the government wishes to . . .formulate policies, or to implement programs, it naturally chooses what to say and what not to say. That must be true for government to work." *Shurtleff v. City of Boston, Massachusetts*, 142 S.Ct. 1583, 1589 (2022) (citations omitted) (*Shurtleff* is commonly referred to as the "Boston flag case"). The *Shurtleff* Court noted that the key question is "**whether the government intends to speak for itself or to regulate private expression**." *Id.* at 1589 (emphasis added). Answering this question requires a "holistic inquiry" that "is driven by a case's context" and "several types of evidence…including: [1] the history of the expression at issue; [2] the public's likely perception as to who (the government or a private person) is speaking; and [3] the extent to which the government has actively shaped or controlled the expression." *Id.* at 1589-90 (brackets added). In the context of Boston's "come-one-come-all" program of allowing private organizations to hold events at City Hall plaza and, as part of the event, to hoist their organization's flag on one of the plaza's flag poles, the Court went through the above analysis and held that the private flags hoisted during such events were not government speech, and therefore the City could not engage in viewpoint discrimination regarding what flags could and could not be hoisted. *Id.* at 1593-94; *see also id.* at 1592 (noting "it is Boston's control over the flags' content and meaning that here is key" and whether "that type of control would indicate that Boston meant to convey the flags' messages").

Conversely, what we have here is permissible governmental speech. "[W]hen the government speaks for itself, the First Amendment does not demand airtime for all views. After all, the government must be able to 'promote a program' or 'espouse a policy' in order to function." *Shurtleff v. City of*

*Boston*, *Massachusetts* (2022) 142 S.Ct. 1583, 1587, *citing Walker v. Texas Div., Sons of Confederate Veterans*, *Inc.*, 576 U.S. 200, 208 (2015).

As to the first *Shurtleff* factor, there is little history in this country, especially at the time of the Founding or passage of the Fourteenth Amendment, of governments or organizations providing gun harm reduction programming and services to private citizens. However, the second and third factors weigh heavily in favor of finding permissible government speech. With respect to the second factor, the public is likely to perceive the programming and services provided by the nonprofit more as government speech by the City than purely private speech by the nonprofit because the programs itself are wholly intended to effectuate the purposes of the Ordinance. § 10.32.200; *see also* § 10.32.200 (the programming and services are prescribed by the Ordinance), § 10.32.220 (the nonprofit providing the programs and services is selected and subject to removal by the City Manager), § 10.32.235(A) (the nonprofit's funding for the programming and services will come entirely from payments that are required by the City and in an amount set and subject to change by the City). In other words, the nonprofit will be (and widely perceived to be) effectuating the City-mandated Ordinance.

The City actively controls and shapes the expression to a significant extent by prescribing the purposes of the nonprofit's activities (§ 10.32.200), the precise topics of the nonprofit's programming and services (§ 10.32.220), and by subjecting the nonprofit to regular required reporting, auditing, and a variety of other oversight set forth in the Ordinance (§§ 10.32.220(D), 10.32.235(A)). This is far more than the minimal control exerted by Boston in the *Shurtleff* case. *Id*. at 1592 (noting Boston only "maintained control over an event's date and time to avoid conflicts," "the plaza's physical premises, presumably to avoid chaos," and "a hand crank so that grounds could rig and raise their chosen flag.")

In stark contrast here, the Ordinance clearly does not seek to "regulate private expression." Rather, the City is "speak[ing] for itself." *Id*. at 1589. The City is engaged in government speech, thereby insulating the Ordinance from challenge under the First Amendment.

To the extent Plaintiffs' First Amendment claim can be construed as violating their freedom of *association*, it should be stricken as wholly insufficiently pled. The Complaint vaguely mentioning "associational freedoms" without more. *See* ¶¶ 58 and 61. This is not enough. See *National Ass'n for Advancement of Colored People v. Button* (1963) 371 U.S. 415, 430–431 (noting the "right 'to engage

in association for the advancement of beliefs and ideas" is a separate right under the First Amendment, subject to different analysis). For their utter lack of properly pleading, any freedom of association claim should be dismissed. *Twombly*, 550 U.S. at 555.

And what little mention there is of Plaintiffs' "freedom of speech" claim ignores that Plaintiffs will not be forced to support the speech of the designated nonprofit. Plaintiffs will never lose their ability to "expressly disavow any connection with the message," if any, that comes from the non-profit. *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 87 (1980) (rejecting shopping center's First Amendment challenge to state law requiring it to allow certain expressive activity on its property); *Rumsfeld v. Forum for Academic and Inst. Rights, Inc.*, 547 U.S. 47, 65, 69-70 (2006) (rejecting First Amendment compelled-speech and compelled-association challenge to federal law conditioning member law schools' receipt of federal funds on schools allowing military recruiters on campus during "Don't Ask, Don't Tell" policy, reasoning that law did "not sufficiently interfere with any message of the school[s]," did not prevent schools from voicing disapproval of the policy, and ultimately did not violate schools' First Amendment rights "regardless of how repugnant" they considered the recruiters' message).

Plaintiffs' argument culminates with their view, citing *Janus*, that laws cannot require people "to 'subsidize' another's speech." ¶ 57. To the extent Plaintiffs allege the First Amendment bars a law from requiring them to pay *any* amount of amount that ends up in the hands of a government-selected entity that expresses *any* view with which they disagree, such an argument is contrary to binding precedent. *See, e.g., Bd. of Regents of the Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229 (2000) ("It is inevitable that government will adopt and pursue programs and policies within its constitutional powers but which nevertheless are contrary to the profound beliefs and sincere convictions of some of its citizens. The government, as a general rule, may support valid programs and policies by taxes or other exactions binding on protesting parties."); *R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 917 (9th Cir. 2005).

Additionally, Plaintiffs' authorities do not support their First Amendment claim. ¶¶ 56-58. *See e.g., Gitlow v. People of State of New York*, 268 U.S. 652, 655 (1925) (an almost hundred-year-old case in which Gitlow was convicted of the statutory crime of criminal anarchy for having written about overthrowing the government by force and violence). And *Janus* concerned whether non-union public employees can be compelled to pay union dues to fund the unions' political lobbying, advertising,

litigation, and other activities. *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448, 2459-61, 2480 (2018)

*Janus*' holding and reasoning are deeply rooted in the union context and inapplicable to the instant case.

Among other reasons, the Ordinance expressly exempts lobbying or litigation related activities. §

10.32.220(B).

Tellingly, Plaintiffs never explain why language and reasoning from these factually inapposite

cases should be extracted from their highly specific contexts and applied here, where a legislature seeks

funds for reasonable measures to carry out its police powers to protect public health and safety. Nor do

Plaintiffs cite any cases in which a court has applied these cases to strike down gun legislation, much

less relied on them, as Plaintiffs do. Plaintiffs' argument should be rejected for these reasons alone. The

core concern of the First Amendment compelled speech doctrine—i.e., prohibiting compelled speech and

association in matters of political lobbying, advocacy, or litigation—simply does not exist here. §

10.32.220(B); *see also Keller v. State Bar of California*, 496 U.S. 1, 12-13 (1990) ("If every citizen were

to have a right to insist that no one paid by public funds express a view with which he disagreed, debate

over issues of great concern to the public would be limited to those in the private sector, and the role of

government as we know it radically transformed.").

Plaintiffs ultimately fail to plausibly allege that the Ordinance will compel speech or association

with which they do not agree—especially in view of federalism concern that federal courts should not

invalidate state laws on the grounds that they violate the right of association based only on "factual

assumptions." *Wash. State Grange*, 552 U.S. at 457; *accord Cal. Democratic Party v. Jones*, 530 U.S.

567, 600 (2000) (Stevens, J., dissenting) ("[A]n empirically debatable assumption … is too thin a reed

to support a credible First Amendment distinction" with respect to burdens on association). Plaintiffs'

First Amendment claim should be dismissed.

**E.     THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.**

Defendants respectfully request that the Complaint be dismissed without leave to amend, in light

of futility, and serious federalism concerns. Preliminarily, the Ninth Circuit's permissive standards for

granting leave to amend do not apply here. Rule 15(a) only allows parties to amend pleadings to "assert

matters that were overlooked or were unknown *at the time the party interposed the original complaint*."

6 Wright & Miller, Fed. Prac. & Proc. § 1473 (3d ed. 2021). Plaintiffs' Complaint was filed before the

Ordinance was effective, a fact that cannot be cured. And allowing Plaintiffs to supplement their pleadings under Rule 15(d) would also not be permissible. "If jurisdiction is lacking at the outset [of a litigation], the district court has no power to do anything with the case except dismiss." *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989); *Lopez v. Turnage*, 2021 WL 5142070, at *1 (N.D. Cal. Oct. 15, 2021). Moreover, the Ordinance is what it is. The legal defects described in this Motion cannot be cured by adding different factual allegations to the Complaint. "Any amendment would be futile." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

A practice of allowing plaintiffs to sue legislators before a bill is effective so that the plaintiffs could amend or supplement their pleadings when the bill becomes effective is inappropriate. *Rizzo v. Goode*, 423 U.S. 362, 380 (1976); *Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1275 n.3 (9th Cir. 1981) (citing "federalism concerns" as reason for declining to exercise jurisdiction in litigation involving municipal police department policies); *Westlands Water Distrib. Dist. v. Nat. Res. Defense Council*, 276 F.Supp.2d 1046, 1051 (E.D. Cal. 2003). The Court should dismiss the Complaint with prejudice.

## V.    CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss Plaintiffs' Complaint under Rule 12(b)(1) and 12(b)(6). Since the Complaint's defects cannot be cured, the City respectfully requests that the dismissal be without leave to amend.

Dated:  May 19, 2022                                  Respectfully submitted,

                                                     **COTCHETT, PITRE & McCARTHY, LLP**


                                                     By: */s/ Tamarah Prevost*
                                                          JOSEPH W. COTCHETT
                                                          TAMARAH P. PREVOST
                                                          ANDREW F. KIRTLEY
                                                          MELISSA MONTENEGRO

                                                          *Attorneys for Defendants*