**BENBROOK LAW GROUP**
Bradley A. Benbrook (No. 177768)
    E-mail: brad@benbrooklawgroup.com
Stephen M. Duvernay (No. 250957)
    E-mail: steve@benbrooklawgroup.com
701 University Ave., Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900, Facsimile: (916) 447-4904

**COOPER & KIRK, PLLC**
David H. Thompson*
    E-mail: dthompson@cooperkirk.com
Peter A. Patterson*
    E-mail: ppatterson@cooperkirk.com
Joseph O. Masterman*
    E-mail: jmasterman@cooperkirk.com
1523 New Hampshire Ave., NW
Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601
        * Appearing Pro Hac Vice

Attorneys for Plaintiffs CHRISTOPHER GLASS
and FIREARMS POLICY COALITION, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| CHRISTOPHER GLASS and FIREARMS POLICY COALITION, INC.,<br><br>            Plaintiffs,<br><br>    vs.<br><br>CITY OF SAN JOSE; ANTHONY MATA, in his official capacity as Chief of Police of the City of San Jose; and JENNIFER MAGUIRE, in her official capacity as City Manager of the City of San Jose,<br>            Defendants. | Case No. 5:22-cv-02533-BLF<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date: August 25, 2022<br>Hearing Time: 9:00 AM |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ...................................................................................................................... 2

STATEMENT OF THE ISSUES TO BE DECIDED................................................................. 2

STATEMENT OF THE RELEVANT FACTS ......................................................................... 3

ARGUMENT ............................................................................................................................. 3

I.     The Court Has Jurisdiction ............................................................................................. 3

       a.     Plaintiffs Have Standing ..................................................................................... 3

       b.     Plaintiffs' Claims Are Ripe ................................................................................. 8

II.    Plaintiffs Have Adequately Pleaded Claims for Relief.................................................. 10

       a.     Plaintiffs State a Proper Facial Challenge.......................................................... 10

       b.     Plaintiffs' Second Amendment Claim Is Adequately Pleaded ........................... 10

       c.     Plaintiffs' First Amendment Claim Is Adequately Pleaded................................. 17

CONCLUSION .......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page**

*American Booksellers Ass'n, Inc. v. Hudnut*, 771 F.2d 323 (7th Cir. 1985)...................................... 8

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)............................................. 5

*Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017) ......................................................... 14

*Buckley v. Valeo*, 424 U.S. 1 (1976) .................................................................... 8

*Collins v. Yellen*, 141 S. Ct. 1761 (2021)........................................................... 4–5

*Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016) .......................... 6

*Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009)............................... 7

*Cox v. New Hampshire*, 312 U.S. 569 (1941) .................................................. 11, 14

*Cramer v. Brown*, 2012 WL 13059699 (C.D. Cal. Sept. 12, 2012)................................ 10

*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) ........................................... 12, 13

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ....................... 18–19

*F.E.C. v. Cruz*, 142 S. Ct. 1638 (2022) ................................................................ 4

*Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100 (9th Cir. 2006)........................ 7

*Gitlow v. New York*, 268 U.S. 652 (1925) .......................................................... 18

*Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ................... 12, 13

*Janus v. American Federation of State, County, and Municipal Employees*,
      138 S. Ct. 2448 (2018) .................................................................. 17, 18

*Jones v. Bonta*, --- F.4th ---, No. 20-56174,
      2022 WL 1485187 (9th Cir. 2022)................................................ 14, 15, 16, 17

*Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298 (2012).......................................... 17

*Kwong v. Bloomberg*, 723 F.3d 160 (2d Cir. 2013)............................................. 11

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
      624 F.3d 1083 (9th Cir. 2010).............................................................. 7

*Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867 (9th Cir. 2013) ............... 6

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)............................................... 3, 5

*Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020)....................................... 12, 14

*McCullen v. Coakley*, 573 U.S. 464 (2014) ..................................................... 15

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)............................................ 13

*Minneapolis Star & Tribune Co. v. Minnesota Com'r of Revenue,*
    460 U.S. 575 (1983) ................................................................................................. 13, 15

*Murdock v. Pennsylvania*, 319 U.S. 105 (1943) ................................................................. 11

*Naffe v. Frey*, 789 F.3d 1030 (9th Cir. 2015) ............................................................ 4, 6, 11

*Nichols v. Brown*, 859 F. Supp. 2d 1118 (C.D. Cal. 2012) ............................................... 6

*Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012) ....................................................... 13–14

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925) .............................................................. 8

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.,*
    547 U.S. 47 (2006) .................................................................................................... 7

*San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) .............. 9, 10

*Shurtleff v. City of Boston*, 142 S. Ct. 1583 (2022) ....................................................... 17

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ................................................ 5

*Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134 (9th Cir. 2000) ................. 8

*Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180 (1997) .............................................. 15–16

*United States v. Salerno*, 481 U.S. 739 (1987) ............................................................... 10

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................................ 8

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) .......................................................... 6

**Ordinances and Rules**

Fed. R. Civ. P. 15(a)(2) ...................................................................................................... 18

San Jose, Cal. Ordinance No. 2.04.4020(A)(2) ............................................................. 4

San Jose, Cal. Ordinance No. 30716
    § 10.32.210(A) ............................................................................................ 2, 3
    § 10.32.210(C) ................................................................................................ 3
    § 10.32.215 ................................................................................................. 2, 3
    § 10.32.220 ...................................................................................................... 11
    § 10.32.220(C) ..................................................................................... 3, 4, 9, 18
    § 10.32.230(A)–(B) ........................................................................................ 3
    § 10.32.235(A)(4) ........................................................................................... 6
    § 10.32.240 .................................................................................................. 3, 4
    § 10.32.240(C) ................................................................................................ 5
    § 10.32.245 ........................................................................................... 3, 4, 5, 14

**Other Authorities**

6 Wright & Miller, Fed. Prac. & Proc. § 1473 (3d ed. 2021) ............................................ 19

## INTRODUCTION

The City of San Jose has passed an Ordinance that restricts a fundamental right in ways that no American government has tried before, and the City is now attempting to shield that Ordinance from judicial review. The Ordinance at issue requires firearm owners, and only firearm owners, to pay an annual fee to a City-designated non-profit organization simply because they own firearms, and it requires them to obtain and maintain insurance "covering losses or damages resulting from any accidental use of the Firearm." SAN JOSE, CAL. ORDINANCE No. 30716 §§ 10.32.210(A), .215 ("Ord."). The City concedes that the Ordinance will burden the exercise of Second Amendment rights, has no basis in the history and tradition of firearm regulation in this country, and will do nothing to deter the criminals who commit gun violence. *See* Compl. Ex. A at 4, Doc. 1-1 (Apr. 26, 2022); Defs.' Not. of Mot. & Mot. To Dismiss at 13, 21, Doc. 26 (May 19, 2022) ("Mot. To Dismiss").

Neither the fee nor the insurance provision can withstand any level of heightened scrutiny required under the Second Amendment. The City defends those provisions by, essentially, asking the Court to trust the City's judgment that the burdens will be worth the benefits. This argument suggests a vision of the Second Amendment as a second-class right. It is not. If the Ordinance burdened any other constitutional right, the City would need, at a minimum, to come forward with evidence to justify the burden. The City must do the same here, but has failed, particularly at this stage of the litigation.

The fee provision is also unconstitutional under the First Amendment because it forces firearm owners to subsidize speech, namely the speech that will be the designated non-profit's mission to promulgate. Both of these constitutional injuries are imminent: the Ordinance is already on the books and is scheduled to take effect on August 7, 2022. The Ordinance's conceded burdens will therefore soon fall on Plaintiff Glass and other members of Plaintiff FPC. Plaintiffs do not need to wait to suffer this harm before challenging the Ordinance. They have standing now, their purely legal claims are ripe for review, and their claims are adequately pleaded. The City's Motion To Dismiss must be denied.

## STATEMENT OF THE ISSUES TO BE DECIDED

Whether the Court has subject-matter jurisdiction over Counts One and Two of the Complaint, and whether Counts One and Two state claims on which relief can be granted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF THE RELEVANT FACTS**

As detailed in the Complaint, *see* Compl. ¶¶ 16–40, Doc. 1 (Apr. 26, 2022) ("Compl."), the San Jose City Council adopted the Ordinance at issue on February 8, 2022. The Ordinance will take effect 180 days after its adoption, on August 7, 2022. Once in effect, the Ordinance will require anyone who resides in San Jose and who possesses a firearm to pay an annual fee to a designated non-profit organization, which will spend the fee proceeds on "services" and "programs and initiatives" related to, among other things, the supposed "risk . . . that a San José firearm owner or her family will incur through her possession of firearms." Ord. §§ 10.32.215, .220(C). The City does not dispute that these are inherently expressive activities.

Within thirty days of the Ordinance's effective date, any firearm owner residing in San Jose must also obtain "a homeowner's, renter's or gun liability insurance policy . . . specifically covering losses or damages resulting from any accidental use of the Firearm, including but not limited to death, injury or property damage." *Id*. § 10.32.210(A), (C).

Anyone subject to the Ordinance must execute a form attesting to his compliance with the insurance requirement, affix proof of his compliance with the fee requirement, keep the form "with the Firearm or Firearms where they are being stored or transported," and present the form to law enforcement upon request. *Id*. § 10.32.230(A)–(B). Failure to comply with the Ordinance will subject the firearm owner to fines and other civil and administrative penalties, and will subject his firearms to confiscation. *See id*. §§ 10.32.240, .245.

This Ordinance is the first of its kind. The City purportedly enacted it in order to reduce gun violence and attendant costs. The City Council considered evidence of those problems before enacting the Ordinance. None of the evidence before the Council suggested that either the fee or insurance requirement would reduce gun violence or its costs in San Jose. *See* Compl. ¶¶ 19–26.

**ARGUMENT**

**I.    The Court Has Jurisdiction**

**a.    Plaintiffs Have Standing**

Plaintiff Glass. Article III standing requires an injury in fact that is concrete, particularized, and imminent. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). At the pleading stage, Plaintiffs

must establish a "plausible" basis for jurisdiction. *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff Glass is a San Jose resident who owns firearms. *See* Compl. ¶ 11. Under the Ordinance, that subjects him to several injuries in fact. When the Ordinance takes effect on August 7, he must pay an annual fee to fund the expressive "programs and initiatives" of a non-profit organization designated by the City, Ord. § 10.32.220(C), and he must keep proof of payment wherever he keeps his firearms, or risk having his firearms confiscated, Ord. § 10.32.245. He must also obtain and/or maintain firearm insurance and keep proof of coverage wherever he keeps his firearms, or again risk having his firearms confiscated. *Id.*[1]

Plaintiffs allege that these requirements infringe on his Second Amendment right to keep firearms and on his First Amendment right not to be forced to subsidize an organization's speech. These allegations suffice for standing. A plaintiff who may not fully exercise a constitutional right has a cognizable injury. *See F.E.C. v. Cruz*, 142 S. Ct. 1638, 1647–48 (2022) ("For standing purposes, we accept as valid the merits of appellees' legal claims . . . . Demanding that the [appellee] . . . subject itself to the very framework it says unconstitutionally burdens its speech . . . finds no support in our standing jurisprudence."). Here, the City "*concede[s]* the Ordinance imposes some minimal or slight burden" on Second Amendment rights. Mot. To Dismiss at 13 (emphasis added). And the burden is more than slight. The Ordinance demands that San Jose firearm owners relinquish property, in the form of money paid to the designated non-profit as a speech subsidy and to insurance providers. These "pocketbook injur[ies]" are "a prototypical form of injury in fact." *Collins v. Yellen*, 141 S. Ct. 1761,

---

[1] The City attempts to mitigate the damage of the confiscation provision by arguing that confiscation will be "subject to a due process hearing" and that "[t]here is currently no lawful basis to impound firearms under state or federal law, meaning this particular provision will not take effect unless and until, for example, the State passes a law permitting municipalities to impound firearms." Mot. To Dismiss at 5. But the Ordinance does not say when the due process hearing must take place. And the City's new position on confiscation directly contradicts the Mayor's prior assertion that the Ordinance creates "an opportunity for us to remove the gun." Compl. Ex. B at 5, Doc. 1-2 (Apr. 26, 2022). In any event, the City's self-serving position in a brief is no assurance that law enforcement will not treat the Ordinance itself as the law authorizing confiscation. After all, the Chief of Police is tasked with "[p]revent[ing] crime and maintain[ing] law and order in the city by enforcing . . . the ordinances of the city." SAN JOSE, CAL. ORDINANCE No. 2.04.4020(A)(2). And as the City says, the Ordinance "is what it is." Mot. To Dismiss at 24. The plain text of the Ordinance directs law enforcement to confiscate firearms from noncompliant firearm owners, along with other penalties. *See* Ord. § 10.32.240. It is at least plausible to conclude that all these penalties will be enforced.

1779 (2021). So is the loss of property that firearm owners face, in the form of confiscated firearms, if they fail to comply with these requirements.

These injuries are particularized, rather than "an impermissible generalized grievance," because they are not "common to *all* members of the public." *Lujan*, 504 U.S. at 575 (emphasis added; internal quotation marks omitted). Plaintiff Glass faces these injuries because he is in the discrete class of San Jose residents who have chosen to exercise their right to keep firearms. These injuries are plainly caused by the Ordinance and redressable through an injunction against enforcing the Ordinance. *See id*. at 560–61. And these injuries are imminent: the Ordinance is scheduled to take effect in about two months.

Not only must Plaintiff Glass be prepared to pay the annual fee at that time—and take steps now to ensure that he has compliant insurance—but he also faces the imminent threat of prosecution if he chooses not to do so. As alleged in the Complaint, he and other members of Plaintiff FPC "face the imminent choice between suffering a burden on their Second Amendment rights or exercising those rights and facing the legal consequences of not paying the fee." Compl. ¶ 36. In other words, they would suffer that burden only for the purpose of complying with the Ordinance; if not for the Ordinance, they could continue to exercise their rights unrestrained. As a law-abiding citizen, however, Plaintiff Glass has not alleged that he *will* violate the Ordinance. Under controlling precedent, he need not do so before bringing suit:

> When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo . . . prosecution as a sole means of seeking relief.

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *accord Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). If Plaintiff Glass maintained firearms without paying an annual fee or ensuring that his renter's insurance policy covers firearm-related damage, as he would do but for the Ordinance, he would be subject to confiscation, administrative fines, and "all other civil and administrative remedies available to the City." Ord. §§ 10.32.240(C), .245.

The City has not said that it intends *not* to enforce these penalties, which, as the City's public statements show, are the Ordinance's primary motivation. *See* Compl. ¶ 51. Plaintiff Glass therefore

has standing at this pre-enforcement stage even apart from the property that the City will soon demand from him under the Ordinance. *See, e.g.*, *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (plaintiffs have First Amendment standing "based on an actual and well-founded fear that the challenged statute will be enforced"); *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1128 (C.D. Cal. 2012) ("Plaintiff is not required to violate [a prohibition on carrying loaded firearms] and subject himself to prosecution to establish an injury-in-fact[.]"); *accord Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 550–51 (10th Cir. 2016). In short, and contrary to the City's contentions, Plaintiff Glass need not suffer the harms of the Ordinance before he has standing to challenge the Ordinance. The Ordinance will soon infringe on rights under the First and Second Amendments that he otherwise intends to exercise.

The City argues that Plaintiff Glass lacks standing because, given the City's delay in clarifying certain aspects of the Ordinance, Plaintiff Glass alleged that he "does not expect to qualify" for the "financial hardship" exception to the Ordinance's fee and insurance requirements. Compl. ¶ 32. Plaintiff Glass is not indigent, and it is unlikely that the City Manager will establish "criteria by which a person can claim a financial hardship exemption" broadly enough to include him, in which case the Ordinance will have little effect. Ord. § 10.32.235(A)(4). In any event, at this stage the allegations in the Complaint must be taken as true. *See, e.g.*, *Naffe*, 789 F.3d at 1035; *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Thus, it must be accepted at this stage that Plaintiff Glass will likely not qualify for the exemption, making it plausible that he will suffer injuries under the Ordinance sufficient for standing.

The same goes for the allegation that, though Plaintiff Glass "holds a renter's insurance policy, the policy documents in his possession do not indicate that it specifically covers loss or damage from the accidental use of a firearm." Compl. ¶ 38. Accepting that allegation as true, it is impossible to tell whether his policy satisfies the Ordinance's vague insurance requirement. But the upshot is not, as the City suggests, that his injury is merely speculative. *See* Mot. To Dismiss at 10. Rather, the upshot is that Plaintiff Glass has a plausible basis to believe that he will need to purchase such coverage or else face the penalties listed in the Ordinance. And at the very least, he will need to work with his insurance agent to ensure that his current policy complies, and he will then need to maintain that policy—with

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS      5:22-cv-02533-BLF

continued payments and no freedom to negotiate a policy that lacks firearm coverage—for as long as he resides in San Jose and possesses firearms. Therefore, Glass has standing even if his current policy complies. *See Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1352 (11th Cir. 2009) (reasoning that even voters with qualifying ID would have standing to challenge voter ID law because they would "be required to present photo identification to vote in person"). Accordingly, these too are burdens sufficient for standing.

Plaintiff FPC. As an initial matter, because Plaintiff Glass has standing, the Court's jurisdiction is secure and the Court need not determine whether Plaintiff FPC has standing. *See Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 53 n.2 (2006).

At any rate, Plaintiff FPC has standing. Associational standing exists where

> (1) at least one of [the organization's] members would have standing to sue in his own right, (2) the interests the suit seeks to vindicate are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1105–06 (9th Cir. 2006). Plaintiff FPC asserts associational standing. *See* Compl. ¶ 12 ("FPC brings this action *on behalf of its members* in San Jose, including Plaintiff Glass.") (emphasis added). And Plaintiff FPC has associational standing. As explained above, at least one FPC member—Plaintiff Glass—has standing to sue in his own right. The City does not dispute that this suit is germane to FPC's purposes or that the participation of other FPC members is unnecessary to resolve the issues in this case and order adequate relief. Thus, FPC has standing to participate in this suit on behalf of its members.

The City focuses on disputing Plaintiff FPC's "organizational" standing, *i.e.*, its standing to sue on behalf of itself. This is not something the Court needs to address given the other bases for standing that exist. But the City's arguments on this score fail as well. Under this Circuit's caselaw, "[a]n organization suing on its own behalf can establish an injury when it suffered both," (1) "a diversion of its resources," and (2) "a frustration of its mission," that is, "that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). The Complaint alleges that "[t]he purposes of FPC include defending and promoting fundamental rights, especially, but not limited

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS      5:22-cv-02533-BLF

to, the Second Amendment right to keep and bear arms," and that "[t]he passage of the Ordinance has also forced Plaintiff FPC to divert resources to protecting the Second Amendment rights of Plaintiff Glass, its other San Jose members, and San Jose firearm owners generally. These are resources that FPC would otherwise have used to accomplish its organizational objectives." Compl. ¶¶ 12, 40. If Plaintiff FPC did not divert these resources to assist its members and other San Jose firearm owners in continuing to exercise their Second Amendment rights despite the Ordinance, it would suffer an injury to its mission of protecting the exercise of those rights. These allegations create a plausible basis for organizational standing if such standing were necessary here, which it is not.

###### b. Plaintiffs' Claims Are Ripe

For similar reasons, Plaintiffs' claims are ripe. Ripeness reflects the separate but related concern that "the harm asserted has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). But the ripeness and standing inquiries often "coincide." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). And they necessarily do where, as here, the City's ripeness and standing arguments are admittedly the same: namely, that the Court purportedly lacks jurisdiction because Plaintiffs have not *yet* been subjected to the Ordinance. *See* Mot. To Dismiss at 9 ("The foregoing [ripeness] argument also makes clear that Plaintiffs lack Article III standing[.]").

That argument fails as to ripeness just as it fails as to standing. Although Plaintiff Glass and other FPC members have not yet been subjected to the Ordinance, they will be. And it is well-established that, "[w]here the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Buckley v. Valeo*, 424 U.S. 1, 114 (1976) (quoting *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974)); *see also Am. Booksellers Ass'n, Inc. v. Hudnut*, 771 F.2d 323, 327 (7th Cir. 1985) (noting that the Supreme Court had found suit ripe in *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), when the challenged statute "had an effective date two years in the future"), *aff'd* 475 U.S. 1001 (1986). Just as Plaintiffs need not wait to be injured to have standing to challenge the Ordinance, they need not wait to be injured for the challenge to be ripe.

That is especially true because the challenge is a "purely legal" one. *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996). There is no dispute that the Ordinance will require San Jose residents to pay an annual fee to a designated non-profit organization, and obtain and maintain compliant insurance, merely to exercise their constitutional rights to possess firearms. Those are the central provisions of the Ordinance. And those provisions are exactly what Plaintiffs allege violate the First and Second Amendments. Resolving these questions "require[s] little factual development." *Id*. They can be resolved entirely on the basis of controlling caselaw, the publicly available materials underlying the Ordinance's erroneous legislative findings, and other historical materials of which the Court can also take notice. Indeed, the City itself launches a fully developed—though still erroneous—defense of the Ordinance on the merits in the 12(b)(6) portion of its motion, *see* Mot. To Dismiss at 12–23, showing that these issues are ripe for decision at the appropriate stage (which is not this stage, *see infra* Part II).

The City attempts to make these issues look unripe by pointing to administerial decisions that the City still needs to make, specifically the amount of the annual fee and the non-profit that will receive it. These are not "key aspects of the Ordinance" for purposes of this challenge. Mot. To Dismiss at 8. Plaintiffs allege that firearm owners cannot be charged any fee at all for exercising the fundamental right to keep and bear arms. Similarly, it does not matter to Plaintiffs' First Amendment claim that the non-profit they must fund has not begun to make expressions with which they disagree. Plaintiffs disagree with the objectives of any organization that is directed by law to run "programs and initiatives" about the supposed "risk" of "possession of firearms." Ord. § 10.32.220(C); *see* Compl. ¶¶ 59–60. And Plaintiffs allege that law-abiding firearm owners cannot be forced to subsidize the organization, period. Nor does it matter that the City has not yet begun to use the Ordinance as a pretext for reducing firearm ownership. That purpose is clear from the City's public statements and is embedded in the Ordinance itself, which exempts holders of concealed-carry licenses only so long as California may continue restricting concealed carry as it does now (and which will therefore step in to restrict Second Amendment exercise if the State is no longer as free to do so). *See* Compl. ¶¶ 26, 32. Plaintiffs may challenge the Ordinance before they have had their firearms taken away or suffered other penalties simply because they lacked a form attesting to their compliance with the Ordinance. To be clear,

1  however, Plaintiffs' claim is that they would prevail even if the Ordinance did not have the purpose or

2  effect of reducing firearm ownership, because it will still burden First and Second Amendment rights.

3  　　　The City itself says that "the Ordinance *is what it is*." Mot. To Dismiss at 24 (emphasis added).

4  The essential facts—that firearm owners will need to pay the annual fee, will need to subsidize the

5  City's chosen non-profit, and will need to obtain and maintain compliant firearm insurance—are in no

6  way hypothetical, and the particulars of the fee are in no way relevant. Just as in *Cramer*, which the

7  City cites, "there is no reason to think" that the fundamental and unconstitutional aspects of the

8  Ordinance "will change" while the City Manager delineates the fee, designates the non-profit, and

9  promulgates any regulations pursuant to the Ordinance. *Cramer v. Brown*, 2012 WL 13059699, at *3

10  (C.D. Cal. Sept. 12, 2012). With the Ordinance's effective date looming, Plaintiffs "will suffer hardship

11  if [the Court] decline[s] to consider the issues" Plaintiffs have raised. *San Diego Cnty. Gun Rights*

12  *Comm.*, 98 F.3d at 1132. That is no mere abstract concern. This case is ripe for review.

13  **II.    Plaintiffs Have Adequately Pleaded Claims for Relief**

14  　　**a.  Plaintiffs State a Proper Facial Challenge**

15  　　　In the jurisdictional section of its brief, the City makes the merits argument that Plaintiffs have

16  failed to state a proper facial challenge. *See* Mot. To Dismiss at 12. "Assuming the Council and City

17  Manager will establish *constitutionally reasonable* fees, fines, and regulations at some point in the

18  future," the City says, the Ordinance will purportedly not be unconstitutional in all circumstances and

19  will thus not meet the *Salerno* standard for facial challenges. Mot. To Dismiss at 12 (emphasis added);

20  *see United States v. Salerno*, 481 U.S. 739, 745 (1987). That statement assumes away the entire issue

21  in this case. Plaintiffs' position is that *no* fines, fees, or regulations that might be promulgated under

22  the Ordinance will be "constitutionally reasonable" as applied to anyone. For there is no "set of

23  circumstances" under which it is "valid" to force law-abiding firearm owners to pay fees for the right

24  to possess firearms or to subsidize the inherently expressive activities of the designated non-profit.

25  *Salerno*, 481 U.S. at 745. That is a proper facial claim.

26  　　**b.  Plaintiffs' Second Amendment Claim Is Adequately Pleaded**

27  　　　The Ordinance violates the Second Amendment in two ways: first, it imposes an effective tax

28  on the mere exercise of a constitutionally guaranteed right, and second it imposes burdens on that right

1    that are unknown to the nation's history and tradition of firearm regulation. At this stage, Plaintiffs

2    again must establish only a plausible basis for relief. *See Naffe*, 789 F.3d at 1035.

3         The City offers scant response to our first claim, arguing simply that the fee and insurance

4    requirements are not unconstitutional under *Murdock v. Pennsylvania*, 319 U.S. 105 (1943), because

5    they "are not a general revenue tax, directly further the maintenance of public order in the matter

6    regulated, and are even subject to a 'financial hardship' exception." Mot. To Dismiss at 19. Under the

7    *Murdock* line of cases, however, "imposing fees on the exercise of constitutional rights is permissible

8    when the fees are designed to defray (and do not exceed) the *administrative costs of regulating the*

9    *protected activity*." *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013) (emphasis added); *accord*

10   *Murdock*, 319 U.S. at 113–14; *Cox v. New Hampshire*, 312 U.S. 569, 576–77 (1941). Thus, in *Cox*, the

11   Court held that the government could charge a fee for parade permits to defray the expenses of the

12   parade licensing system, which the Court held did not violate the First Amendment. *Cox*, 312 U.S. at

13   576–77. The insurance requirement does not serve this function; there is no indication that the City

14   expects to collect any insurance payouts, and thus the regime will not cover any of the costs of

15   administering it. Neither does the fee requirement: the annual fee goes only to fund the expressive

16   activities of a non-profit organization that is not authorized to regulate firearm ownership in any way.

17   *See* Ord. § 10.32.220. That the fee is not a general revenue tax, and is subject to an exemption, does

18   not mean that it is tailored to the end that *Murdock* allows. The Ordinance is unconstitutional for this

19   reason alone.

20        The City apparently believes that the non-profit's "services" will defray the costs of *the City's*

21   regulation of "public order." Mot. To Dismiss at 19. That misunderstands the inquiry. "Public order"

22   is disrupted by gun violence. But gun violence is not a protected activity. The City may seek to regulate

23   gun violence and to enforce any such valid regulations. When it comes to imposing a fee on law-abiding

24   firearm owners merely for the right to possess firearms, however, the cost must be attendant to a valid

25   regulation of *that* activity. The City has pointed to no valid regulation on the mere right to possess a

26   firearm that the City is currently administering or to any costs thereof that the annual fee would defray.

27   *Cf. Kwong*, 723 F.3d at 168–69. At any rate, the notion that a fee paid to a non-profit will generate

28   services that will reduce administrative costs for the City is (1) entirely unsubstantiated and (2) a far

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS    5:22-cv-02533-BLF

1    more attenuated connection between the fee and the costs than was present in *Murdock* and similar

2    cases. Thus, Plaintiffs have stated at least a plausible claim for relief on this ground.

3            The Ordinance is separately unconstitutional because the burdens it places on the exercise of

4    Second Amendment rights are wholly unjustified. Under the current framework for analyzing Second

5    Amendment claims in this Circuit, the Court must decide "whether the challenged law burdens conduct

6    protected by the Second Amendment," and then "apply an appropriate level of scrutiny." *Mai v. United*

7    *States*, 952 F.3d 1106, 1113 (9th Cir. 2020) (internal quotation marks omitted).[2]

8            The City "concede[s]" that "the Ordinance imposes some minimal or slight burden." Mot. To

9    Dismiss at 13. The burden is more than minimal, as explained above and further below, and even if it

10   were only minimal the Ordinance would still need to be tailored enough to its asserted goals to satisfy

11   some form of heightened scrutiny. *See Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 966

12   (9th Cir. 2014). But this concession is significant: at this stage, it means that the Complaint cannot be

13   dismissed unless the City shows that the facts alleged, taken as true, cannot even plausibly establish a

14   Second Amendment violation under the appropriate level of review. That is an impossible showing for

15   the City to make here.

16           Laws that burden Second Amendment rights, as the Ordinance concededly does, "must

17   withstand more searching scrutiny than rational basis review." *Mai*, 952 F.3d at 1115 (internal

18   quotation marks omitted). "The precise level of heightened scrutiny depends on (1) how close the law

19   comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right."

20   *Id.* (internal quotation marks omitted). More specifically, the Court must assess how severely the law

21   restricts the scope that the Second Amendment right was understood to have at the Founding, because

22   the right must be given the same scope today. *See Dist. of Columbia v. Heller*, 554 U.S. 570, 576–77

23   (2008).

24           Although the City concedes that the Ordinance burdens its residents' Second Amendment

25   rights, it refuses to engage in this historical inquiry. That some courts might have defied *Heller* by

26

27   [2] Plaintiffs reserve the right to argue to the appropriate court that, under *District of Columbia v. Heller*,
     554 U.S. 570 (2008), the inquiry should be governed by the Second Amendment's text and history
28   rather than by interest-balancing.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS     5:22-cv-02533-BLF

"skipping the 'historical tradition' analysis," as the City says, does not change what *Heller* demands. Mot. To Dismiss at 18. And the City does not even try to rebut the fact, which it has previously proclaimed as a virtue, that the Ordinance is the first of its kind. *See* Compl. ¶ 2. That necessarily means that the Ordinance burdens Second Amendment rights in ways unknown to the Founding generation. The City itself admits that "there is little history in this country, especially at the time of the Founding or passage of the Fourteenth Amendment, of governments or organizations providing gun harm reduction programming and services to private citizens." Mot. To Dismiss at 21. There is no history of saddling law-abiding firearm owners with the costs of such services, or of effectively deputizing insurance carriers to regulate firearm ownership in ways that the government lacks the power or will to try. *See* Compl. ¶ 51.

There is thus no question that the Ordinance infringes on the historical scope of the Second Amendment right. And that infringement is severe. If law-abiding citizens of the Founding era had the right to keep and bear arms without paying an annual fee and maintaining firearm insurance—as proven by the historical record (and lack of any evidence to the contrary)—then the Ordinance *categorically* burdens that right and should therefore be held categorically unconstitutional under *Heller*. But if the Court departs from *Heller* and applies the tiers of scrutiny, strict scrutiny is appropriate.

This is so first because the fee and insurance mandate effectively are taxes on the exercise of Second Amendment rights, and the Supreme Court in the First Amendment context has held that such taxes must satisfy strict scrutiny. *See Minneapolis Star & Tribune Co. v. Minnesota Com'r of Revenue*, 460 U.S. 575, 585 (1983). Because the Second Amendment is not a "second-class right," *McDonald v. City of Chicago*, 561 U.S. 742, 781 (2010) (plurality), strict scrutiny must apply here as well. Indeed, *Heller* repeatedly looked to the First Amendment when delineating the scope of the Second. *See, e.g.*, 554 U.S. at 579, 582, 591, 595, 626, 635.

This is also true because the Ordinance does not merely regulate the "*manner* in which persons may exercise their Second Amendment rights," as did the firearm-storage and ammunition-sale restrictions at issue in *Jackson*, which the City repeatedly cites. *Jackson*, 746 F.3d at 961 (emphasis in original; internal quotation marks omitted). Nor does it leave sufficient room or "alternative channels" for firearm owners to exercise their rights, *id.*, as in other cases the City cites, *see Nordyke v. King*, 681

F.3d 1041, 1045 (9th Cir. 2012) (en banc) (O'Scannlain, J., concurring in the judgment). The Ordinance prohibits anyone who does not pay the annual fee and maintain compliant firearm insurance from exercising their Second Amendment rights whatsoever. The City attempts to liken this restriction to a "manner" regulation, but the City is simply incorrect that the Ordinance does not regulate "the core Second Amendment right of keeping firearms in the home for self-defense." Mot. To Dismiss at 13. Assuming the core of the Second Amendment were limited to the home, which it is not, law-abiding San Jose residents *cannot* keep firearms in the home if they do not comply with the Ordinance. If they are found with firearms but without a form attesting to their compliance with the fee and insurance requirements, their firearms are subject to confiscation. *See* Ord. § 10.32.245. The City also argues that the fee and insurance requirements are minor burdens, while at the same time admitting that the fee has not yet been set and presenting no evidence about what insurers might charge for compliant firearm insurance (which the Ordinance does not control). Even if these costs are not a substantial burden for some firearm owners, the penalty for not complying, or for simply misplacing one's attestation form, is confiscation, as severe a restriction on one's Second Amendment right as there can be. Unlike the storage and other "manner" regulations on which the City relies,[3] the Ordinance establishes a precondition to exercising Second Amendment rights anywhere in the City. Under the currently operative Second Amendment framework, the Ordinance is subject to strict scrutiny.

Regardless, the Ordinance does not survive even intermediate scrutiny. "To satisfy intermediate scrutiny, the government's statutory objective must be significant, substantial, or important, and there must be a reasonable fit between the challenged law and that objective." *Mai*, 952 F.3d at 1115 (internal quotation marks omitted). Although it is not clear what the City means by asserting an interest in

---

[3] That includes the purportedly "similar law," Mot. To Dismiss at 14, that was at issue in the only other case binding upon this Court that the City cites in this regard: *Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017), which the Ninth Circuit has construed as one of the cases dealing with "laws that regulate either *the way* people can obtain or use firearms, or auxiliary features of those firearms." *Jones v. Bonta*, --- F.4th ----, No. 20-56174, 2022 WL 1485187, at *14 (9th Cir. 2022) (emphasis added). To the extent any other cases uphold laws that can be construed as similar, those cases depart from controlling precedent and should not be followed here. What is more, the challenged fee in *Bauer* was used to defray the cost of enforcing California's laws on eligibility to possess a firearm, which the Ninth Circuit held brought the law within the scope of the Supreme Court's decision in *Cox v. New Hampshire*, 312 U.S. 569 (1941). *See Bauer*, 858 F.3d at 1226. As explained, the same is not true here. Indeed, *none* of outlays for fees or insurance required of gun owners by San Jose will even be paid to the City, so the City cannot possibly use them to defray expenses.

"addressing gun injuries"—nothing in the Ordinance itself does that—Plaintiffs do not dispute that the City has an interest in promoting public safety. Mot. To Dismiss at 15–16. The question remains whether the Ordinance "is a reasonable fit for that aim." *Jones v. Bonta*, --- F.4th ----, 2022 WL 1485187, at *19 (9th Cir. 2022). As the Ninth Circuit has recently emphasized, "intermediate scrutiny continues to require an analysis of whether the regulation is a reasonable fit for the government's objective, not just an assessment of whether it does anything at all." *Id*. at *17. "[A] law is a good fit for a goal if it regulates only when it helps achieve that goal, and not in other instances." *Id*. at *18. Thus, the Court must ensure "not just that [the law] accomplishes something, but also that it does not burden far more [Second Amendment conduct] than is necessary." *Id*.

San Jose's Ordinance will regulate far more conduct than necessary to achieve its apparent goals, and indeed will regulate in many instances without achieving those goals at all. Take the annual fee. Regardless of whether the services the fee pays for will advance public safety, the fee simply *funds* those services. In other words, the actual purpose of the fee is not public safety but rather revenue generation. And there is an obvious less-restrictive alternative to singling out gun owners to fund these services: paying for the services with funds from the City's general revenues. *See Minneapolis Star & Tribune*, 460 U.S. at 586. Even under intermediate scrutiny, the plainly less-restrictive alternative undermines the fee requirement. *See McCullen v. Coakley*, 573 U.S. 464, 495 (2014).

The insurance requirement fares no better. If the City is concerned with compensation for accidental firearm injuries, it can require individuals who actually cause such injuries through their culpable behavior to bear the costs of those injuries without burdening all gun owners with an insurance mandate. And to the extent the City is hoping that the insurance companies will regulate gun ownership in ways the City is not willing (or constitutionally able) to do itself, the Court should not allow this sort of delegation of regulatory authority over a fundamental constitution right to private entities.

The City frames its tailoring argument by saying, essentially, "trust us." *See* Mot. To Dismiss at 16 ("[C]ourts must give substantial deference to the predictive judgments of the legislature on public policy questions") (quotation marks omitted). This argument relies on the Supreme Court's *Turner* cases, which are inapplicable. The Supreme Court did give deference to Congress's judgment that the law at issue was enacted to serve an important objective. *See Turner Broad. Sys., Inc. v. FCC*, 520 U.S.

1    180, 195 (1997). But as the Ninth Circuit has recognized, when it came to assessing whether the law

2    fit that objective—the only question here—the Supreme Court afforded no such deference. *See id*. at

3    213–14; *see also Jones*, 2022 WL 1485187, at *20 ("[I]n *Turner II*, the Supreme Court did not defer

4    when assessing the fit itself. We also defer to the legislature's judgment only on the effect of a law,

5    and not on the law's fit.") (internal citation omitted). Which makes sense: if a court's role were merely

6    to ensure that a legislature *thought* the means fit the ends, intermediate scrutiny would amount to no

7    scrutiny. Similarly, "the real-world knowledge each councilmember brings to their legislative role" is

8    not proof that this piece of legislation will have any real-world effect aside from infringing on

9    constitutional rights. Mot. To Dismiss at 16.

10        The Complaint thoroughly refutes all evidence offered in the legislative process to support the

11   Ordinance. *See* Compl. ¶¶ 19–26. The City offers no new evidence here, and makes little effort to

12   resuscitate the existing evidence. The sheer number of sources cited, *see* Mot. To Dismiss at 16, is not

13   relevant in and of itself. After all, the sources could all be irrelevant to the supposed costs of firearm

14   ownership in San Jose—as most of the cited studies are. The City Council might have thought that

15   these sources "support[ed] its judgment that the Ordinance's annual Fee requirement . . . will positively

16   improve public health." *Id*. But this generalized *ipse dixit* does not establish a reasonable fit. The

17   sources must prove what the City says, and actual review of the sources shows that the City is mistaken.

18   As detailed in the Complaint, the sources draw no line between lawful gun possession and crime or

19   public costs, or between the fee or insurance requirements and reduced crime or public costs. And the

20   City does not say that they do. That is fatal to the Ordinance, and it is certainly fatal to the Motion To

21   Dismiss.

22        To point out the flaws in the City's evidence is not to criticize its "priorities." Mot. To Dismiss

23   at 17. The Ordinance might "seek to reduce gun crime," *id*., but it must do so in a valid way. Where

24   constitutional rights are at stake, the City's chosen means can be valid only if they burden no more

25   constitutional conduct than allowed by the applicable tier of scrutiny to advance the City's interest—

26   which means that they must advance that interest in the first place. And there is simply no basis to

27   conclude that the Ordinance will in fact reduce gun *crime* when the City itself admits that "[o]f course,

28   *criminals* won't obey insurance or fee mandates." Compl. Ex. A at 4 (emphasis added). A law that

1   mostly regulates in instances where it will not achieve its apparent goal is the opposite of "a law [that]

2   is a good fit for a goal." *Jones*, 2022 WL 1485187, at *18. The City cannot get by simply by repeating

3   "violence reduction" and the other aims that the Ordinance supposedly serves, when the evidence offers

4   no proof that the Ordinance actually will. Mot. To Dismiss at 17 (cleaned up). Whatever leeway the

5   City might receive under intermediate scrutiny, the City cannot impose targeted costs on San Jose

6   firearm owners with no discernible benefit to any other residents. The Complaint plausibly alleges that

7   this is all the Ordinance does. Count One of the Complaint satisfies Rule 12(b)(6).

8       **c.   Plaintiffs' First Amendment Claim Is Adequately Pleaded**

9       Count Two satisfies Rule 12(b)(6) as well. The City spends most of its argument against this

10  Count on the irrelevant question whether the designated non-profit organization's speech will constitute

11  government speech under *Shurtleff v. City of Boston*, 142 S. Ct. 1583 (2022). That would matter if

12  Plaintiffs were asserting a right to have the organization express certain views. But that is not the issue.

13  Plaintiffs are asserting a right *not* to subsidize—and thereby share in and associate with—anything the

14  organization might say. The relevant precedent is therefore not *Shurtleff*, but *Janus v. American*

15  *Federation of State, County, and Municipal Employees*, 138 S. Ct. 2448 (2018).

16      The City's few arguments against our actual First Amendment claim are meritless. Whether

17  that claim is characterized as one for freedom of speech or freedom of association, it is sufficiently

18  pleaded: the Complaint relies on *Janus*, *see* Compl. ¶¶ 57–61, which sounds in both the freedom of

19  speech and the freedom of association, *see Janus*, 138 S. Ct. at 2463.

20      Although *Janus* specifically held that public employees cannot be forced to subsidize a union's

21  speech, the First Amendment principles applied in *Janus* are not limited to "unions' political lobbying,

22  advertising, litigation, and other activities." Mot. To Dismiss at 22–23. Unions were not allowed to use

23  compelled dues on political speech well before *Janus*. *See, e.g.*, *Knox v. Serv. Emps. Int'l Union*, 567

24  U.S. 298, 314 (2012). In *Janus*, the Court relied on the broader principle that "the First Amendment

25  *does not permit the government to compel a person to pay for another party's speech* just because the

26  government thinks that the speech furthers the interests of the person who does not want to pay." *Janus*,

27  138 S. Ct. at 2467 (emphasis added). This principle applies whether the other party is a union or, as

28  here, a non-profit organization of the City's choosing. That Plaintiffs may disavow the non-profit's

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS      5:22-cv-02533-BLF

speech, *see* Mot. To Dismiss at 22, does not undo the damage done by forcing Plaintiffs to subsidize that speech. Tellingly, the ability to disavow was not discussed in *Janus*.

Nor is the *Janus* argument here akin to an argument against paying any amount to the government. *See* Mot. To Dismiss at 22 (citing, *e.g.*, *Bd. of Regents of the Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229 (2000)). It of course cannot be helped that citizens will disagree with some things the government does with their tax money. But the annual fee never enters the City's coffers. Rather, it goes directly to the non-profit. The Ordinance also takes pains to separate the non-profit organization from the City. *See* Ord. § 10.32.220(C) (giving the organization general directives but stating that "[o]therwise, the City shall not specifically direct how the monies from the [annual fee] are expended"). And that organization's explicit purpose is to disseminate speech on a fraught political issue. *See id.* To be sure, the organization will be the City's designated speaker. But that is not functionally different from *Janus*, where the union was designated by law as the employees' exclusive representative. *See Janus*, 138 S. Ct. at 2460. However one looks at it, the Ordinance forces a specific group (law-abiding firearms owners) to subsidize the expressive activities of another specific group (the non-profit) whether they like it or not. That is squarely unconstitutional under *Janus*.

Finally, the City cannot cloak itself in "federalism concern[s]." Mot. To Dismiss at 23. The First Amendment applies to the City,[4] and the Ordinance must comply with the First Amendment. The Complaint plausibly alleges that it does not.

## CONCLUSION

The Complaint satisfies Rules 12(b)(1) and 12(b)(6) and should not be dismissed. For that reason, the Court need not consider the City's gratuitous request that the Complaint be dismissed with prejudice and without leave to amend. If the Court believes that the Complaint currently has a jurisdictional defect, however, the City identifies no valid reason to insulate the Ordinance from later review by departing from the normal course and dismissing the Complaint with prejudice or denying leave to amend, which should be given "freely." FED. R. CIV. P. 15(a)(2); *see, e.g.*, *Eminence Cap.,*

---

[4] The City argues that *Gitlow v. New York*, 268 U.S. 652 (1925), does not support the merits of Plaintiffs' claim. Plaintiffs cited *Gitlow* simply in showing that the First Amendment has been incorporated against state and local officials, which the City does not contest.

*LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). And if the Court believes that the merits depend on any detail of the Ordinance that the City has not yet clarified, then, per the City's own source, that detail is proper for an amendment or supplemental pleading because it was "unknown at the time the party interposed the original complaint." 6 WRIGHT & MILLER, FED. PRAC. & PROC. § 1473 (3d ed. 2021). But as explained, the Complaint is sufficient for this case to proceed.

Dated: June 2, 2022                    Respectfully submitted,

                                       */s/ Bradley A. Benbrook*

                                       Bradley A. Benbrook (No. 177768)
                                       Stephen M. Duvernay (No. 250957)
                                       BENBROOK LAW GROUP, PC
                                       701 University Ave., Suite 106
                                       Sacramento, CA 95825
                                       (916) 447-4900
                                       brad@benbrooklawgroup.com
                                       steve@benbrooklawgroup.com

                                       David H. Thompson*
                                       Peter A. Patterson*
                                       Joseph O. Masterman*
                                       COOPER & KIRK, PLLC
                                       1523 New Hampshire Ave., NW
                                       Washington, D.C. 20036
                                       (202) 220-9600
                                       dthompson@cooperkirk.com
                                       ppatterson@cooperkirk.com
                                       jmasterman@cooperkirk.com

                                       *Counsel for Plaintiffs*

                                            * Appearing Pro Hac Vice