JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
MELISSA MONTENEGRO (SBN 329099)
mmontenegro@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CHRISTOPHER GLASS and FIREARMS POLICY COALITION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN JOSE; ANTHONY MATA, in his official capacity as Chief of Police of the City of San Jose; and JENNIFER MAGUIRE, in her official capacity as City Manager of the City of San Jose,<br><br>Defendants. | Case No. 5:22-cv-02533-BLF<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULES 12(b)(1) AND 12(b)(6)**<br><br>Date:       August 25, 2022<br>Time:       9:00 a.m.<br>Courtroom: Zoom Webinar<br>Judge:      Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................2

    A. The Complaint Should Be Dismissed Under Rule 12(B)(1). ......................................2

        1. Plaintiffs' Claims Are Not Ripe for Review .....................................................2

        2. Plaintiff Glass Does Not Have Standing ..........................................................3

        3. Plaintiff FPC Does Not Have Organizational Standing ..................................6

        4. Both Plaintiffs Lack Standing Under Prudential Considerations ....................6

        5. Plaintiffs Do Not State a Proper Facial Constitutional Challenge. ..................7

    B. The Complaint Should Be Dismissed Under Rule 12(b)(6). ......................................8

        1. Plaintiffs Fail to State a Second Amendment Claim. ......................................8

            a. The Costs Associated with the Ordinance Do Not Violate Plaintiffs' Second Amendment ............................................................8

            b. Strict Scrutiny Does Not Apply to the Court's Review of the Ordinance ...............................................................................................9

            c. The Ordinance Passes Constitutional Muster Under Intermediate Scrutiny ...............................................................................................10

        2. Plaintiffs Fail to State a First Amendment Claim Based on Compelled Speech or Association. ..................................................................12

III. CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Laboratories v. Gardner*,
  387 U.S. 136 (1967) ................................................................................................................3

*Americans for Prosperity Found. V. Bonta*,
  141 S. Ct. 2373 (2021) ............................................................................................................7

*Babbitt v. United Farm Workers Nat'l*,
  442 U.S. 289 (1979) ................................................................................................................5

*Bauer v. Becerra*,
  858 F.3d 1216 (9th Cir. 2017) ............................................................................................8, 10

*Bd. of Regents of the Univ. of Wis. Sys. v. Southworth*,
  529 U.S. 217 (2000) ..............................................................................................................12

*Brown v. Jacobsen*,
  2022 WL 122777 (D. Mont. Jan. 13, 2022) ...........................................................................2

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ....................................................................................................................2

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................................3

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) ............................................................................................................4

*Common Cause/Georgia v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) ..............................................................................................6

*Democratic Nat'l Comm. v. Watada*,
  198 F. Supp. 2d 1193 (D. Haw. 2002) ...................................................................................2

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ............................................................................................................1, 9

*Doe v. Aetna, Inc.*,
  2016 WL 1028363 (S.D. Cal. Mar. 15, 2016) ........................................................................2

*Federal Election Commission v. Cruz*,
  142 S. Ct. 1638 (2022) ............................................................................................................3

*Forsyth County v. Nationalist Movement*,
  505 U.S. 123 (1992) ................................................................................................................3

*Freedom to Travel Campaign v. Newcomb*,
    82 F.3d 1431 (9th Cir. 1996).................................................................................................3

*Gilbert v. Chase Home Fin., LLC*,
    2013 WL 2318890 (E.D. Cal. May 28, 2013)..........................................................................5

*Glickman v. Wileman Bros. & Elliott, Inc.*,
    521 U.S. 457 (1997).................................................................................................................4

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ..............................................................................................9

*Heller v. District of Columbia*,
    801 F.3d 264 (D.C. Cir. 2015) ..............................................................................................10

*Janus v. American Federation of State, Cnty., and Muni. Employees*,
    138 S. Ct. 2448 (2018)...........................................................................................................12

*Johanns v. Livestock Mktg. Ass'n*,
    544 U.S. 550 (2005).................................................................................................................4

*Kwong v. Bloomberg*,
    723 F. 3d 160 (2d Cir. 2013)............................................................................................8, 10

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010)................................................................................................6

*Libertarian Party of Los Angeles County v. Bowen*
    709 F.3d 867 (9th Cir. 2013)..................................................................................................5

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010)...............................................................................................................10

*Minnesota Star & Tribune Co. v. Minnesota Com'r of Revenue*,
    460 U.S. 575 (1983)...............................................................................................................10

*Murdock v. Pennsylvania*,
    319 U.S. 105 (1943).............................................................................................................8, 9

*Nichols v. Brown*,
    85 F. Supp. 2d 1118 (C.D. Cal. 2012)....................................................................................5

*O'Connell v. Gross*,
    No. CV 19-11654-FDS, 2020 WL 1821832 (D. Mass. Apr. 10, 2020)...........................10

*Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n*,
    461 U.S. 190 (1983).................................................................................................................3

*Pena v. Lindley*,
    898 F.3d 969 (9th Cir. 2018)..................................................................................................9

*R.J. Reynolds Tobacco Co. v. Shewry*,
    423 F.3d 906 (9th Cir. 2005) .................................................................................................. 13

*San Diego Cnty. Gun Rights Committee v. Reno*,
    98 F.3d 1121 (9th Cir. 1996) ......................................................................................... 4, 5, 6, 7

*Sierra Club v. Dombeck*,
    161 F. Supp. 2d 1052 (D. Ariz. 2001) ...................................................................................... 2

*Smith v. Pac. Properties & Dev. Corp.*,
    358 F.3d 1097 (9th Cir. 2004) .................................................................................................. 6

*United States v. Chester*,
    628 F.3d 673 (4th Cir. 2010) .................................................................................................... 9

*United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) ....................................................................................................... 9

*United States v. Skoien*,
    614 F.3d 638 (7th Cir. 2010) .................................................................................................... 9

*Valley Forge Christian College v. Americans United for Separation of Church and
    State, Inc.*,
    454 U.S. 464 (1982) .................................................................................................................. 7

*W.E.B. DuBois Clubs of America v. Clark*,
    389 U.S. 309 (1967) .................................................................................................................. 3

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) .................................................................................................................. 7

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) .................................................................................................... 6

**Rules**

Federal Rules of Civil Procedure
    Rule 12(b)(1) ....................................................................................................................... 2, 13
    Rule 12(b)(6) ................................................................................................................. 8, 12, 13

**Statutes**

California Business & Professions Code
    § 2216.2 ..................................................................................................................................... 4

California Government Code
    § 100705 .................................................................................................................................... 4

California Health & Safety Code
    § 44015 ...................................................................................................................................... 4

Defendants' Reply In Support of Motion to Dismiss Plaintiffs' Complaint;                              iv
Case No. 5:22-cv-02533-BLF

Calfornia Vehicle Code
  §§ 4000.1(a), 240007(b)..................................................................................................4

**Ordinances**

San Jose City Ordinance
  § 10.32.200(B) .......................................................................................................8, 11
  § 10.32.245..................................................................................................................3
  § 10.32.250..................................................................................................................8
  § 10.32.255(A)-(C).....................................................................................................7

**Other Authorities**

Current Causes of Death in Children and Adolescents in the United States, May 19,
  2022, *available at* https://www.nejm.org/doi/full/10.1056/NEJMc2201761 .......................1

Disease Control and Prevention, Firearm Violence Prevention, available at
  https://www.cdc.gov/violenceprevention/firearms/fastfact.html (accessed May 18,
  2022) (noting that in 2020, there were 45,222 firearm-related deaths in the United
  States)..........................................................................................................................8

*New England Journal of Medicine,* Current Causes of Death in Children and
  Adolescents in the United States, May 19, 2022, *available at*
  https://www.nejm.org/doi/full/10.1056/NEJMc2201761 .......................................1

*Pew Research Center*, What the data says about gun deaths in the U.S., available at
  https://www.pewresearch.org/fact-tank/2022/02/03/what-the-data-says-about-gun-
  deaths-in-the-u-s/.......................................................................................................1

**Suspects**

*Jackson v. City of San Francisco,*
  746 F.3d 953 (9th Cir. 2014)......................................................................................9

*Turner Broadcasting System, Inc. v. F.C.C. (Turner II),*
  520 U.S. 180 (1997)............................................................................................11, 12

I.    INTRODUCTION

More Americans died of gun-related injuries, including a near-record number of gun suicides, in 2020 than in any other year on record, according to recently published statistics from the Centers for Disease Control and Prevention.[1] Firearm-related incidents have been identified as the leading cause of death in children.[2] California is not immune to this nationwide epidemic, nor is the City of San Jose.

Plaintiffs' complaint hinges on their position that "any" regulation on gun ownership is an impermissible government overreach and violation of their constitutional rights. Plaintiffs view is inconsistent with the law.

The Second Amendment protects the right to keep firearms in the home for purposes of self-defense. *Heller*, 554 U.S. at 629. *Heller* and the cases that follow it, however, make crystal clear that governments are permitted to regulate firearm ownership above that Constitutional "floor." Plaintiffs' overarching thesis, that any regulation whatsoever is a violation of their Constitutional fundamental rights, does not hold water.

The City's elected leaders have discretion to enact reasonable legislation to address the massive, tragic, public health crisis caused by gun-related deaths and injuries within their City. Plaintiffs' criticisms of the Ordinance do nothing to detract from this discretion. In their opposition to the City's Motion to Dismiss, Plaintiffs either cite no legal authority at all, or rely heavily on decades-old and out-of-circuit cases, cherry-picking self-serving quotes to advance their positions. Plaintiffs' Opposition brief, just like their Complaint, fails to show that their claims are ripe, that they have standing, or that they have plausibly alleged entitlement to relief under any of their causes of action. The Ordinance should be upheld and Plaintiffs' Complaint dismissed without leave to amend because there are no facts they could allege to cure their defective claims.

---

[1] *See Pew Research Center*, What the data says about gun deaths in the U.S., available at https://www.pewresearch.org/fact-tank/2022/02/03/what-the-data-says-about-gun-deaths-in-the-u-s/

[2] *See New England Journal of Medicine,* Current Causes of Death in Children and Adolescents in the United States, May 19, 2022, *available at* https://www.nejm.org/doi/full/10.1056/NEJMc2201761

## II. ARGUMENT

### A. The Complaint Should Be Dismissed Under Rule 12(B)(1).

#### 1. Plaintiffs' Claims Are Not Ripe for Review.

Plaintiffs' claims are unripe for review and subject to dismissal under Rule 12(b)(1) because the Ordinance provides only a framework for a legal regime and defers deciding key aspects of that regime to future legislative action and rulemaking, none of which has yet occurred. Mot. at 7-9.

Plaintiffs argue their claims *will be* ripe for review once Plaintiffs are "subjected to the Ordinance." Opp. at 8-9. But this runs afoul of the well-settled rule that "[r]ipeness is determined at the time of the filing of the complaint." *See, e.g., Doe v. Aetna, Inc.*, 2016 WL 1028363, at *3 (S.D. Cal. Mar. 15, 2016) (quoting *Forest Glade Homeowners Ass'n v. Allied Mut. Ins. Co.*, 2009 WL 927750, at *2 (W.D. Wash. Mar. 31, 2009)); *accord Brown v. Jacobsen*, 2022 WL 122777, at *2 (D. Mont. Jan. 13, 2022); *Democratic Nat'l Comm. v. Watada*, 198 F. Supp. 2d 1193, 1197 (D. Haw. 2002); *Sierra Club v. Dombeck*, 161 F. Supp. 2d 1052, 1062 (D. Ariz. 2001). *Buckley v. Valeo*, 424 U.S. 1, 114 (1976) does not support Plaintiffs' argument; *Buckley* was an extremely fact-specific finding (that only that certain claims were ripe), made in the context of a specific procedural record. *Id*. at 113-118. Indeed, before the High Court weighed in after more time had passed, the appellate court deemed several of the plaintiffs' issues unripe because the court lacked "concrete facts [] necessary to an informed decision.'" *Id*. at 114-15. That is the precise situation here: "the concrete facts that are necessary to an informed decision" are missing. *Id*. Plaintiffs' claims under the First and Second Amendment require careful analysis of the *extent* of any burden the Ordinance imposes, which at this stage, is not possible to precisely know.

Plaintiffs further argue that their challenge to the Ordinance is a "purely legal" one and as such "resolving these questions requires little factual development." Opp. at 9. While true and the City agrees that discovery will unlikely be necessary to advance this case to the extent Plaintiffs' claims succeed, Plaintiffs' "legal" attack is obviously on the terms of the Ordinance. And Plaintiffs fail to cite any cases in which courts have found "pure legal" attacks can be made, and conclusions drawn, from laws that are not yet finalized. The sparse law they do cite certainly does not support that proposition. *See* Opp. at 9; citing *San Diego Cnty. Gun Rights Committee v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996) (wherein the court declined to review a case, finding it unripe because "[a] concrete factual situation is necessary to

delineate the boundaries of what conduct the government may or may not regulate without running afoul of the Commerce Clause.") Cases where ripeness was found are clearly distinguishable. *Cf. Freedom to Travel Campaign v. Newcomb,* 82 F.3d 1431, 1434-35 (9th Cir. 1996) (issue was ripe where plaintiffs desired to travel to Cuba and *existing* regulations restricted travel to Cuba without a license); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967) (issue was ripe where all parties agreed that it was purely legal and a matter of congressional intent).

Here, given that the "concrete facts underpinning Plaintiffs' First and Second Amendment claims are missing, Plaintiff's challenge cannot properly be characterized as "purely legal." *See W.E.B. DuBois Clubs of America v. Clark*, 389 U.S. 309, 312 (1967) ("[T]he District Court should not be forced to decide [] constitutional questions in a vacuum."). While some extremely specific prior restraints on speech that are being attacked as overbroad can be subject to a facial challenge, Plaintiffs make no such specific allegations in their Complaint. *See e.g.*, *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992)

Moreover, Plaintiffs also have not identified any hardship. To determine whether plaintiffs' claims are ripe for review, Courts evaluate whether the parties will suffer hardship if they decline to consider the issues. *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n*, 461 U.S. 190, 201 (1983) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)). Plaintiffs make no such specific showing in their Complaint; and no such argument in their Opposition. The Complaint should be dismissed as unripe.

### 2.   Plaintiff Glass Does Not Have Standing.

Neither Plaintiff Glass's complaint, nor his opposition establishes a threatened injury is "certainly impending," as necessary to establish Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("allegations of *possible* future injury are not sufficient") (emphasis in original). Plaintiffs' rely on self-serving language from *Federal Election Commission v. Cruz*, 142 S. Ct. 1638, 1647-48 (2022) and a footnote to argue that under the Ordinance Glass risks "having his firearms confiscated." Opp. at 4. But the Ordinance only authorizes "impoundment" of firearms and only "to the extent allowed by law" (§ 10.32.245) and does not presuppose outright seizure. There is currently no lawful basis to impound firearms under state or federal law, so the provision Plaintiffs are concerned with will not take

effect until, for example, the passage of a state law permitting municipalities to impound firearms. Moreover, because Plaintiff has not even checked to see if his existing insurance covers unintentional harm (*see* Complaint, ¶ 38), he does not even know if he would be in violation of the Ordinance when it is effected.

Plaintiffs next rely on *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) in support of their spin that the Ordinance "demands that San Jose firearm owners relinquish property, in the form of money paid to the designated non-profit as a speech subsidy and to insurance providers." Opp. at 4. *Collins* is inapplicable here; in that case, the federal agency *had already transferred* the value of plaintiffs' property rights to the government. *Id*. The injury had occurred. Here, no "relinquish[ing]" of property has happened, or is even threatened to take place upon the passage of the Ordinance. Opp. at 4. The City is not even affirmatively enforcing or policing compliance with the Ordinance. And this argument fails for another reason: there are a great variety of examples where a government requires a citizen to pay another private entity directly: health insurance mandates (*see* Cal. Govt. Code § 100705), medical malpractice insurance mandates for physicians (*see* Cal. Bus. & Prof. Code § 2216.2), mandated smog testing (*see* Cal. Vehicle Code §§ 4000.1(a), 240007(b)); Cal. Health & Safety Code § 44015); mandated assessments for agricultural marketing and promotion. And courts have upheld such payments in response to Constitutional challenges. *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550 (2005) (holding that assessments on beef producers to fund marketing program was "government speech" not subject to First Amendment challenge); *Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457 (1997) (holding federal mandate to fund generic advertising for California peaches, plums and nectarines did not violate farms' First Amendment rights), and governments allowance of private companies to operate toll roads.

Plaintiffs next argue that Plaintiff Glass "faces the imminent threat of prosecution" and that his "injuries are particularized, rather than 'an impermissible generalized grievance,' because they are not 'common to all members of the public.'" Opp. at 5 (citing to *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To assert standing on a threat of prosecution basis, plaintiffs must show a "'genuine threat of *imminent* prosecution.'" *San Diego Cnty. Gun Rights Committee v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (citing *Washington Mercantile Ass'n v. Williams*, 733 F.2d 687, 688 (9th Cir. 1984) (emphasis in original). "Significantly, the mere 'possibility of criminal sanctions applying does not of

itself create a case or controversy.'" *Id*. (citing *Boating Industry Ass'ns v. Marshall*, 601 F.2d 1376, 1385 (9th Cir. 1979). "In evaluating the genuineness of a claimed threat of prosecution, courts examine three factors: (1) whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." *Libertarian Party of Los Angeles County v. Bowen* 709 F.3d 867, 870 (9th Cir. 2013), citing *McCormack v. Hiedeman*, 694 F.3d 1004, 1021 (9th Cir.2012).

Plaintiff Glass cannot show a "genuine threat of imminent prosecution" because (1) he has not "articulated concrete plans to violate" the Ordinance; (2) cannot point to any threat by the City to prosecute him; and (3) cannot point to any history of prosecutions under the Ordinance. *Id*. at 1126-29. Plaintiff Glass explicitly in his own words, "has not alleged that he *will* violate the Ordinance." Opp. at 5. Indeed, Plaintiff Glass admits he does not know whether his existing insurance policy would *already comply* with the Ordinance. Complaint, ¶ 38. And quizzically, Plaintiffs argue that Plaintiff Glass need not allege his intent to violate the Ordinance before bringing suit and rely on *Babbitt v. United Farm Workers Nat'l*, 442 U.S. 289 (1979) in support. But contrary to Plaintiffs' characterizations, *Babbit* found that "persons having [only fears that are] imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Id*. at 298 (quoting *Younger v. Harris*, 401 U.S. 37, 41 (1971)). There is no threat by the City to "prosecute" Plaintiff Glass. "[A] general threat of prosecution is not enough to confer standing." *San Diego Cnty. Gun Rights*, 98 F.3d at 1127.

Plaintiff Glass's speculative fears that he might someday suffer injuries falls well short of establishing the requisite Article III injury. *See, e.g., Gilbert v. Chase Home Fin., LLC*, 2013 WL 2318890, at *11 (E.D. Cal. May 28, 2013) ("The prospect of [plaintiff] someday losing the property is speculative, and does not represent a concrete injury because "there is no indication that the foreclosure process has either begun or concluded.").

The other authorities relied upon by Plaintiffs are similarly unsupportive of their position. *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) found under a highly specialized set of facts wherein a plaintiff intended directly to violate the law, a challenged statute amounted to "self-censorship" and chilled First Amendment rights. *Nichols v. Brown*, 85 F. Supp. 2d

1118, 1128 (C.D. Cal. 2012) supports the City's position in that it granted a defendants' motion to dismiss, where the plaintiff failed to establish standing on a threat of prosecution. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), was a fact-specific case wherein the court "construe[d] the complaint liberally because it was drafted by a pro se plaintiff." Finally, *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1345 (11th Cir. 2009), was an out-of-circuit case wherein the court decided whether a Georgia law that required every voter who casts a ballot in person to produce an identification card with a photograph of the voter unduly burdened the right to vote. None of these authorities change the outcome here.

Plaintiff Glass's claims should be dismissed for lack of jurisdiction.

### 3. Plaintiff FPC Does Not Have Organizational Standing.

Plaintiff FPC cannot establish standing because it did not sufficiently allege that passage of the Ordinance caused any direct or judicially cognizable injuries to FPC itself, nor on behalf of its members. *See* Mot. at 11-12. In response, Plaintiff FPC reiterates its vague, unsupported allegation of injury as diversion of its resources. Opp. at 7-8. Simply spending money or resources is insufficient to establish Article III standing. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010); *but cf. Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (allegations that organization had to "divert its scarce resources from other efforts to promote awareness of—and compliance with—federal and state accountability laws and to benefit the disabled community in other ways" to "monitor[ing] the violations and educat[ing] the public regarding the discrimination at issue" are sufficient to allege standing). But FPC does not even articulate the spending of such "resources" at all – there are no allegations setting forth the nature or extent of those resources or why it would have spent them reacting to an Ordinance *that is not even in effect yet*. FPC's claims should be dismissed on this basis alone.

### 4. Both Plaintiffs Lack Standing Under Prudential Considerations

"In addition to its constitutional components, standing doctrine also includes several 'judicially self-imposed' constituents, grounded in comity and prudence." *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1131 (9th Cir. 1996). Even assuming Plaintiffs have alleged "redressable injury" under Article III, courts must refrain "from adjudicating 'abstract questions of wide public significance'

Defendants' Reply In Support of Motion to Dismiss Plaintiffs' Complaint; 6
Case No. 5:22-cv-02533-BLF

which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474–75 (1982); *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1131 (9th Cir. 1996). Courts have declined to entertain disputes in light of these prudential considerations. *E.g., id*.

Allegations of threatened prosecution and infringement of Second and First Amendment rights framed as injuring, "anyone desir[ing] to possess" firearms in San Jose will not suffice for standing. Id. at 1132. These alleged harms amount to no more than a "'generalized grievance' shared in substantially equal measure by…a large class of citizens, and thus do not warrant the exercise of jurisdiction." *Id*. at 1131-32 (quoting *Western Min. Council v. Watt*, 643 F.2d 618, 632 (1981)). This is clear from the text of the Ordinance itself: given the financial hardship (and other) exemptions in the Ordinance, FPC cannot actually allege that all of its members would be impacted at all by the Ordinance as it may not even apply to them. § 10.32.255(A)-(C).

### 5. Plaintiffs Do Not State a Proper Facial Constitutional Challenge.

Even if Plaintiffs' claims were somehow ripe and they had standing, their facial challenge still fails because they do not allege facts that "establish no set of circumstances exists under which the law would be valid or show that the law lacks a plainly legitimate sweep," or (in the First Amendment context) that "a substantial number of its applications are unconstitutional, judged in relation to the [law]'s plainly legitimate sweep." *Americans for Prosperity Found. V. Bonta*, 141 S. Ct. 2373, 2387 (2021); *see also Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450, 455 (2008) (explaining that facial challenges are "disfavored" for "several reasons"). Plaintiffs ignore this argument, but reiterate their position that "no fines, fees, or regulations that might be promulgated under the Ordinance will be 'constitutionally reasonable' as applied to anyone." Opp. at 10. This is not a legitimate analysis of this question, and it is not the proper Constitutional analysis. That Plaintiff FPC (as stated on its website) opposes any gun regulation whatsoever does not change the nature of facial challenges. The Complaint should be dismissed.

### B. The Complaint Should Be Dismissed Under Rule 12(b)(6).

#### 1. Plaintiffs Fail to State a Second Amendment Claim.

In its Motion, the City showed that, under the Ninth Circuit's two-step test for Second Amendment claims, the Ordinance easily survives under intermediate scrutiny. Mot. at 12-19. Plaintiffs' circular, often self-serving arguments in response are largely unsupported by law and untethered to the facts.

##### a. The Costs Associated with the Ordinance Do Not Violate Plaintiffs' Second Amendment

Plaintiffs first contend that the fee and insurance requirements are invalid under *Murdock v. Pennsylvania*, 319 U.S. 105 (1943). Opp. at 11. Plaintiffs claim *Murdock* permits imposing fees only when those fees defray the "administrative costs" of regulating an activity. *Id.*, citing *Kwong v. Bloomberg*, 723 F. 3d 160, 165 (2d Cir. 2013). But the court in *Murdock*, a 1943 First Amendment case, was reviewing a tax on speech. The fee here is not a tax, and both the fee and the insurance mandate, as set forth below, are carefully tailored to the City's effectuated (and important) objectives. One of the Ordinance's stated purpose of reducing the social and financial costs caused by guns (§ 10.32.200(B)) is clearly an important interest. *See, e.g.*, *Bauer*, 858 F.3d at 1226; *Kwong*, 723 F.3d at 168 (city permitted to recover costs as part of scheme "designed to promote public safety and prevent gun violence"). There can be no serious doubt that gun violence is a major public health crisis. *See* U.S. Centers for Disease Control and Prevention, Firearm Violence Prevention, available at https://www.cdc.gov/violenceprevention/firearms/fastfact.html (accessed May 18, 2022) (noting that in 2020, there were 45,222 firearm-related deaths in the United States). And in advancing this argument Plaintiffs are also wrong on the facts. While they argue "the [Ordinance] will not cover any of the costs of administering it" – that is incorrect. *Compare* Opp. at 11, *with* Ordinance, § 10.32.250 (authorizing certain cost recovery.)

Plaintiffs' other conflated argument apparently takes aim with the scope of the City's police power to regulate public safety, or perhaps, with the efficacy of the future non-profit's services. Opp. at 11. Claiming the City is not entitled to "regulat[] the mere right to possess a firearm" is clearly wrong. Opp. at 11. *Bauer*, 858 F.3d at 1226; *Kwong*, 723 F.3d at 168.

It cannot reasonably be disputed that the City carefully enacted this Ordinance after consideration, discussion, and review of a swath of materials supporting each of its aspects. Prevost Decl. ¶¶ 2-13, Exs. 1-12. An insurance mandate and fee to fund services to prevent gun harm are legitimate uses of legislative power to handle a complex problem, Plaintiffs' reliance on the *Murdock* case does not proffer a reason to discredit the Ordinance.

### b. Strict Scrutiny Does Not Apply to the Court's Review of the Ordinance

Plaintiffs also overstate what they characterize as a "concession" by the City. Clearly, the City does not "concede" that the Ordinance imposes an unconstitutional burden on the Second Amendment. Opp. at 12. Putting aside that the City only conceded "for the purposes of this Motion" (Mot. at 13) a minimal burden, the City merely accepted, as many other Courts have done, that for the purposes of the first part of this analysis, some minimal burden on the Second Amendment can be assumed. *See e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008); *Jackson v. City of San Francisco*, 746 F.3d 953, (9th Cir. 2014). Contrary to Plaintiffs' extremist view, "some minimal burden" does not equate to an unconstitutional ordinance. That "concession" only pertains to the first part of the multiple-part test. *See* Mot. at 12-13 (citations omitted.) And as set forth in detail in the City's Motion, which echoes the analysis of many courts, intermediate scrutiny applies to the Court's review of the Ordinance. *See e.g., Young*, F.3d 765 at 784; *see also Heller v. District of Columbia*, 670 F.3d 1244, 1257 (D.C. Cir. 2011) ("*Heller II*")

In a further misconstruction of the analysis, Plaintiffs claim, supported by basically no legal authority, that strict scrutiny applies to their Second Amendment claim. Opp. at 11-12. Plaintiffs first argue the Court must conduct a historical inquiry into the scope of the Second Amendment and limit that scope to what was conceptualized by this country's Founding Fathers. Opp. at 12. This request contravene the wisdom of other courts (including in this Circuit) that have bypassed the historical inquiry (*See e.g., Pena v. Lindley*, 898 F.3d 969, 975 (9th Cir. 2018); *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010); *United States v. Chester*, 628 F.3d 673, 679 (4th Cir. 2010). But more critically, Plaintiffs do not engage (with law, fact, or analysis) the historical inquiry themselves, before conclusorily opining that it comes out in their favor. *See* Opp. at 13. If, as Plaintiffs contend, every regulation concerning firearms needed to be "rooted" in

historical tradition to be valid, legislators would not have any leeway to enact legislation to address it. The problem of gun violence in this country is nowhere near what the Founding Fathers likely expected. The legislative solutions to it must be just as novel.

Finally and most critically, Plaintiffs cite no authority applying strict scrutiny to a firearm regulation. *See* Opp. at 13, citing only *Minnesota Star & Tribune Co. v. Minnesota Com'r of Revenue*, 460 U.S. 575, 585 (1983), a First Amendment speech case not involving firearms; *McDonald v. City of Chicago*, 561 U.S. 742, 781 (2010) (which does not apply a particular standard of scrutiny). And Plaintiffs ignore completely the many other courts that have found intermediate scrutiny applies. *See, e.g., Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017); *Heller v. District of Columbia*, 801 F.3d 264, 278 (D.C. Cir. 2015) ("*Heller III*"); *Kwong v. Bloomberg*, 723 F.3d 160, 161, 167 (2d Cir. 2013), cert. denied, 134 S.Ct. 2696 (2014); *O'Connell v. Gross*, No. CV 19-11654-FDS, 2020 WL 1821832 (D. Mass. Apr. 10, 2020),

Beyond that, Plaintiffs' nonsensical or blatantly false assertions about the nature of the Ordinance should not sway the Court. *See* Opp. at 14 ("the Ordinance prohibits anyone who does not [comply with the Ordinance] from exercising their Second Amendment rights whatsoever."). To make clear again, the Ordinance does not propose an outright ban or seizure of firearms, as other challenged laws have done. It simply imposes an insurance mandate and a fee. It does not prevent gunowners with using their guns for self-defense in the home. Plaintiffs' hyperbole does not provide a basis to strike down the Ordinance, the terms of which the Court can review on its own.

### c. The Ordinance Passes Constitutional Muster Under Intermediate Scrutiny

Plaintiffs' alternative contention that the Ordinance fails intermediate scrutiny is similarly flawed. Opp. at 15. Conceding the City has an interest in promoting public safety, Plaintiffs' grievance is with the "fit" between the law and its aim. Opp. at 15.

The circularity of Plaintiffs' claim that the Ordinance has not already "achieve[d] its goal" – even before the Ordinance is effective – cannot be understated. *Id*. Plaintiffs impose a requirement that does not exist: that the City "prove" the "real-world effect" of a law that has not even been fully fleshed out yet and is not effective. That is not how legislation works. Under Plaintiffs' analysis, the City is required

to look into the future to prove that its (not yet effective law) has already effectively accomplished its aims. Opp. at 16. Nothing more needs to be said to rebut this meritless proposition.

The Court's task is simple: to ensure the City has "drawn reasonable inferences based on substantial evidence" in formulating its judgments. *Turner Broadcasting System, Inc. v. F.C.C. (Turner II)*, 520 U.S. 180, 181 (1997). Seeking to bypass the actual appropriate inquiry, Plaintiffs purport to impose a higher standard of review than intermediate scrutiny requires, and launch post-hoc criticisms of specific aspects of the Ordinance as support. *E.g.*, Opp. at 15. None of their arguments pass muster.

For example, Plaintiffs apparently complain that because the fee will "fund" the non-profit's services, it supports "revenue generation" rather than public safety. Opp. at 15. This is nonsensical. Obviously collecting funds must occur before those funds can be spent. This does not deem the Ordinance unconstitutional. And saying the City should pay out of pocket for these services instead is a *post hoc* complaint that does not change the analysis of this Ordinance. Indeed, the basic philosophy of the Ordinance is that gunowners, rather than the City, should be required to offset the social cost of gun harm caused by their guns. (*See e.g.*, § 10.32.200(B))

Plaintiffs' other complaints, about what the Ordinance *does not* do, similarly have no place here. For example, Plaintiffs' objection that the Ordinance does not do enough to regulate "culpable" individuals, is inapplicable to this analysis. Opp. at 15; see also Opp. at 16 (wherein Plaintiffs apparently opine that the Ordinance does not do enough to prevent gun crime). Similarly, Plaintiffs' protestation that the Ordinance may not benefit any other, non-resident gunowners is inapposite. Opp. at 17. Plaintiffs are free to make efforts to influence future legislation through the legislative process, but none of these grievances apply to, or undermine, the legality of the Ordinance here. *See* Mot. at 12-20.

And again, the City relied on over a dozen substantive studies, findings, and literature to form its reasonable judgment that an insurance mandate combined with voluntary gun-safety and other programming and services for gunowners and their household members will deter, prevent, or reduce accidental gun harm, including materials concerning financial and other harms arising from gun violence. See e.g., Prevost Decl. ¶¶ 2-13, Exs. 1-12; Ex. 7 (materials provided to City Council before its January 25, 2022 meeting). These are supportive of the "reasonable fit" required.

1  Plaintiffs' assertion, that their complaint "thoroughly refutes" all evidence cited in the legislative
2  process which they contend "could all be irrelevant" misunderstands the legal analysis required here.
3  Opp. at 16. Despite Plaintiffs' efforts to pick apart the legislative record, the materials relied upon by the
4  City certainly support its actions under the appropriate level of scrutiny. The City has reasonably inferred,
5  after reviewing voluminous literature, that requiring insurance coverage for accidental harm, and paying
6  a reasonable fee to fund gun violence prevention programs would effectuate its aims. This precisely
7  satisfies intermediate scrutiny, and nothing more is required. *Turner II*, 520 U.S. at 181.

8      **2.    Plaintiffs Fail to State a First Amendment Claim Based on Compelled Speech
9      or Association.**

10  In its Motion, the City showed that Plaintiffs' First Amendment argument is based largely on the
11  kind of speculative and conclusory allegations that need not be credited under Rule 12(b)(6) and that the
12  Ordinance is permissible government speech. Mot. at 20-23. In response, Plaintiffs purposely ignore the
13  City's permissible government speech argument, choosing instead to rely exclusively on *Janus v.*
14  *American Federation of State, Cnty., and Muni. Employees*, 138 S. Ct. 2448 (2018). Opp. at 17-18.

15  And the argument that Plaintiffs' make, that they should be excluded from a requirement that
16  they pay a fee about "anything the organization might say" is not a valid attack. Opp. at 17-18. Even if
17  the Court chooses to transplant *Janus*' extremely fact-specific reasoning and holdings to this case (it
18  should not), all that *Janus* held was that, under Illinois law, an arrangement whereby public employees
19  are forced to subsidize a union, even if they choose not to join and strongly object to the positions the
20  union takes in collective bargaining and related activities, violates the free speech rights of nonmembers
21  by compelling them to subsidize private speech on matters of substantial public concern. *Janus v.*
22  *American Federation of State, County, and Mun. Employees, Council 31*, 138 S.Ct. 2448, 2459–2460
23  (2018). Plaintiffs utterly fail, in either their Complaint or opposition brief, to substantiate their view that
24  the Ordinance fits into this square hole. *See* Opp. at 17-18. If Plaintiffs' arguments were credited, any
25  law requiring payment of any amount, for any purpose, would be objectionable under the First
26  Amendment if a constituent did not agree with it. That is not how government, legislation, or
27  Constitutional analysis functions. *See, e.g., Bd. of Regents of the Univ. of Wis. Sys. v. Southworth*, 529
28  U.S. 217, 229 (2000) ("It is inevitable that government will adopt and pursue programs and policies

within its constitutional powers but which nevertheless are contrary to the profound beliefs and sincere convictions of some of its citizens. The government, as a general rule, may support valid programs and policies by taxes or other exactions binding on protesting parties."); *R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 917 (9th Cir. 2005).

Finally, Plaintiffs do not identify where or how their Complaint alleges a violation of the right of association. It is improperly pled as set forth in the City's Motion and this theory, at a minimum, should be stricken or dismissed from the pleadings with prejudice. Mot. at 21-22.

## III. CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court grant its Motion to Dismiss the Complaint under Rule 12(b)(1) and 12(b)(6). Since the Complaint's defects cannot be cured, the City requests that the dismissal be without leave to amend.

Dated:  June 9, 2022                              Respectfully submitted,

**COTCHETT, PITRE & McCARTHY, LLP**

By: */s/ Tamarah P. Prevost*
         JOSEPH W. COTCHETT
         TAMARAH P. PREVOST
         ANDREW F. KIRTLEY
         MELISSA MONTENEGRO

*Attorneys for Defendants*